FED. DEPOSIT INS. CORP., Respondent, v. STENSLAND, et al., Appellants

(15 N. W.2d 8.)

(File No. 8689.   Opinion filed June 16, 1944.)

**Dan McCutchen,** of Belle Fourche, **W. M. Bennett,** of Buffalo, and **Byron S. Payne,** of Pierre, for Appellants.

**Chas. L. Brady,** of Belle Fourche, **Mark H. Amundson,** of Bowman, N. D., **Francis C. Brown,** of Washington, D. C., and **James M. Kane,** of Chicago, Ill. **(John H. Russell,** of Chicago, Ill., of counsel), for Respondent.

RUDOLPH, J.  Sometime prior to November, 1935, the Bank of Reeder, a North Dakota banking corporation, located and doing business in the village of Reeder, North Dakota, owned certain real property in Harding County, South Dakota.  The defendants, Owen Stensland and Elene Stensland, residents of South Dakota, desired to purchase this land from the Bank of Reeder and did so finally purchase the land.  In payment of the purchase price the Stenslands

executed and delivered to the Bank of Reeder their promissory notes which form the basis of this action and executed and delivered to the Bank of Reeder a real estate mortgage whereby the land they had purchased was mortgaged to secure the payment of the notes. Prior to the delivery of these notes to the Bank of Reeder, the defendants, Andrew Thompson and Amanda Thompson, signed a guarantee of payment endorsed on the back of the notes. The notes are several in number but all substantially in the form as follows:

"150.00                                                    $150.00

Reeder, N. Dak. November 1st, 1935     Due 11-1-1935

November 1st, 1936 after date for value received, I promise to pay to the order of Bank of Reeder, Payable at Bank of Reeder, Reeder, No. Dakota.

One Hundred fifty and No/100 Dollars with interest thereon from date until fully paid, at the rate of four per cent per annum, payable annually.

The several makers, signers, guarantors and endorsers hereof hereby waive presentment, demand, notice of dishonor and protest, and consent that the time of payment may be extended or this note renewed without affecting their liability thereon.

Secured by REM    (Signed) Owen Stensland
Address                  (Signed) Elene Stensland

Ludlow, So. Dak.

(Endorsed on back of note)

For value received, I hereby guarantee the payment of the within note at maturity or at any time thereafter, and hereby agree and consent to all the stipulations contained therein.

(Signed) Andrew Thompson
(Signed) Amanda Thompson
(Signed) BANK OF REEDER,
By L. V. Skoglund, Cashier."

The deposits of the Bank of Reeder were insured by the plaintiff, Federal Deposit Insurance Corporation, a body cor-

porate duly chartered, organized and existing under and by virtue of the Act of Congress of June 16, 1933, known as Sec. 12B of the Federal Reserve Act, and acts amendatory thereof, 12 U. S. C. A. § 264. On the 17th day of April, 1940, the Bank of Reeder was closed and placed in voluntary liquidation and all deposits in the same were transferred to the First National Bank of Hettinger, North Dakota, which assumed all deposit liability of the closed bank. With the closing of the Bank of Reeder certain assets of the bank, including the promissory notes herein sued on, were for valuable consideration conveyed, assigned and transferred to the plaintiff. In defense of the alleged liability upon the notes the defendants set up Ch. 150, South Dakota Laws of 1935 (SDC 39.0308). This act so far as here material provides as follows: "Section 3. In all cases where a note, given by the purchaser and grantee of real estate to the vendor and grantor thereof, to secure payment of all or any part of the purchase price, is secured by mortgage on such real estate, such note shall bear an endorsement upon its face to the effect that it is given for such purpose and thereafter the same shall not be negotiable nor shall any liability of any kind be enforced upon it, either by action at law or by set-off or counter-claim, or otherwise, excepting by foreclosure of the mortgage in rem. However, the rights of any party to said note or of any assignee or purchaser shall not be affected by the absence of such endorsement but shall be the same as though said note had been properly endorsed."

By Section 6 of the Act it is provided that the provisions of that part of the Act (Section 3) just quoted "shall not apply to any note or mortgage in favor of or held by the United States of America or any agent, agency or instrumentality of the United States or any corporation or association whose obligations are guaranteed in whole or in part by the United States."

From the foregoing statement of facts it will be observed that there is no dispute in so far as the facts are concerned. The dispute relates first to the application of the said Ch. 150, South Dakota Laws of 1935, and second, if it be held that that law is applicable whether the plaintiff is, by the above quoted language from Section 6 of the Act, excepted from its

provisions. The trial court entered judgment in favor of the plaintiff. Defendants have appeal.

In support of the judgment entered by the trial court the respondent first maintains that the notes in suit are contracts made and to be performed in the state of North Dakota and therefore should be governed by the laws of North Dakota which has no statute comparable to Ch. 150, Laws of 1935. It is often said that a contract valid in the state where made and to be performed is valid everywhere. It does not follow, however, from the fact that a contract is valid in a state where made and to be performed, that another state will enforce it by appropriate legal remedy. If the contract is contrary to the public policy of the forum, remedy will be denied. This is a general rule supported by reason of authority. Hudson v. Sheafe, 41 S. D. 475, 171 N. W. 320. Restatement of the Law, Conflict of Laws, Sec. 612. By the Act of 1935, we think it clear that the legislature condemned as inimical to the public good the enforcement of a personal liability upon a purchase money note where such note is secured by a mortgage given upon the purchased real estate and by this Act the legislature closed the courts of this state to the enforcement of a personal liability upon the note. We believe this definitely fixed the policy of this state with respect to actions upon notes of the character described in the law. We notice the fact that the law was passed at a time when actions based upon purchase money notes, deficiency judgments and the like, were causing many citizens of this state great hardship and the drastic effect of such actions on our overall economy was apparent. The legislature in the said Ch. 150 and the preceding Ch. 149, Laws of 1935, sought not only to give some relief to subsequent mortgagors, but by this legislation declared the enforcement of the type of contracts therein described to be against the public interest. It follows that if a contract of the type declared odious by the statute is presented to the court in this state for enforcement, it will not here be enforced in contradiction to the declared policy of the law and it is immaterial where the contract was made or originated.

We do not believe that the plaintiff, Federal Deposit Insurance Corporation, comes within the exception provided in Sec. 6 of the Act. The exception provides that the provisions of the Act "shall not apply to any note or mortgage in favor of or held by the United States of America or any agent, agency or instrumentality of the United States or any corporation or association whose obligations are guaranteed in whole or in part by the United States." The plaintiff, it is obvious, is not the United States of America referred to in the exception. Other than the United States of America, the exception, in our opinion, relates only to those agencies of the United States or any corporation or association whose obligations are guaranteed by the United States. Respondent takes the position that that portion of the exception which states, "whose obligations are guaranteed in whole or in part by the United States", qualifies only the words "corporation or association." With such construction of the exception we are unable to agree. We believe the qualification applies to any "agent, agency or instrumentality of the United States" as well as "any corporation or association." Certainly the Act did not intend to exempt from its provisions any and all agents of the United State which exemption would necessarily follow were the construction of the respondent adopted. We have referred to Ch. 149, Laws of 1935, as an act of legislature having an object and purpose similar to Ch. 150 and the exception there relates only to any agency or instrumentality of the United States government whose obligations are guaranteed in whole or in part by the United States government. It is true that in Ch. 150 the words "any corporation or association" are added to the exception but we do not believe that such addition should change the apparent meaning and purpose of the language employed. We observe that shortly prior to this 1935 Act the Congress was creating corporations or associations such as Home Owners Loan Corporation, Ch. 64, 48 Stat. 128, as amended by Ch. 168, 48 Stat. 643, 12 U.S.C.A. § 1461 et seq., and the Federal Farm Mortgage Corporation, Ch. 7, 48 Stat. 344, 12 U.S.C.A. § 1020 et seq., which, no doubt, are agencies or instrumentalities of the United States, but which are also corporations or associations organized by Act

of Congress. The obligations of these corporations are fully and unconditionally guaranteed both as to interest and principal by the United States. These, and similar corporations were organized by the Congress for the purpose of extending credit during the days of depression when the regular lending agencies either were unable or failed to extend the credit necessary to preserve the national economy. We are convinced that it was to protect the United States in this effort to provide the citizens credit that prompted the exceptions to be written into the law in 1935, and there was no intention that the exception should apply to every agent or agency in the United States without regard to the nature or type of the agency. It is a rule of statutory construction that the exception in statutes should be strictly but reasonably construed; they extend only so far as their language fairly warrants, and all doubts should be resolved in favor of the general provision rather than the exception. Mitchell Produce Co. v. Morrison, 63 S. D. 127, 257 N. W. 47. Applying this general rule of construction to the language and evident purpose of the statute, we are of the opinion that the plaintiff fails to fall within the exception to the statutes for the reason that its obligations are not guaranteed in whole or in part by the United States. Neither is the Bank of Reeder, in whose favor the notes are drawn, an agency of the United States or a corporation whose obligations are guaranteed by the United States. True the deposits of the Bank of Reeder were guaranteed by the Federal Deposit Insurance Corporation under the Act of Congress creating this corporation, but it is too clear to require discussion that this corporation is not the United States, or that the deposits in the Bank of Reeder were guaranteed by the United States.

██ It appears that the defendants, Andrew and Amanda Thompson signed the notes as guarantors and not as principals. The question arises as to the liability of the guarantors. We have heretofore held that by the enactment of the 1935 law the legislature has declared the public policy of the state to be against the enforcement of the type of contract here involved. To now permit the enforcement of the liability against the guarantors would in a large measure defeat the purpose of the legislation and be contrary to the

policy declared. Even though the principal contract is merely unenforceable against the debtor, and not declared either illegal or void, nevertheless, by denying the enforcement of the contract as being against public policy, the legislature has in effect declared the contract itself to be condemned by the public policy of this state. Such a contract being unenforceable, it follows, we believe, that the guaranty of this contract is also unenforceable. It is generally held that if a contract is invalid, the guaranty partakes the character of the principal contract and is also invalid. 38 C. J. S., Guaranty, § 16; 24 Am. Jur. Guaranty 41. So in this case the contract of guaranty partakes the character of the principal contract and is condemned by the same policy that condemned the principal contract and rendered it unenforceable.

The judgment appealed from is reversed.

All the Judges concur.