478 P.2d 500

Ralph E. BULLINGTON, John L. McMahon, Jr., Joseph K. McMahon, William H. Rouzer and Malcolm Putty, Sr., and Ralph E. Bullington, Trustees for Bullington Properties, Plaintiffs and Appellants,

v.

Lee MIZE, aka Lee S. Mize, Defendant and Respondent.

No. 11972.

Supreme Court of Utah.

Dec. 15, 1970.

174

Crockett, C. J., dissented and filed opinion in which Tuckett, J., concurred.

John C. Beaslin, of Beaslin, Nygaard, Coke & Vincent, Vernal, for plaintiffs and appellants.

Dean W. Sheffield, Salt Lake City, Colton & Hammond, Vernal, for defendant and respondent.

CALLISTER, Justice:

Plaintiffs, residents of Wichita Falls, Texas, initiated this action to recover the unpaid balance of $69,666.56 on a vendor's lien note executed by defendant. In November of 1965, plaintiffs sold defendant certain real property upon which the Motor Lodge Motel was situated in Wichita Falls for $200,000. Defendant conveyed his equity in a ranch in Colorado and executed a note for $100,000, secured by a trust deed on the motel property. The last payment made by defendant was in May of 1967. On October 12, 1967, James E. Prothro, the trustee, under the deed of trust, notified defendant by registered mail that if the default in payments on the note were not cured, he had been instructed to take the necessary steps to foreclose in accordance with the trust deed. Defendant did not respond, and thereafter, trustee, Prothro, posted notices in conformity with the trust deed and Texas law and sold the property at public auction to the highest bidder on January 2, 1968. Plaintiffs, the beneficiaries under the deed, made the highest bid and bought the property for $25,000. Subsequently, plaintiffs filed the instant action.

Defendant, in his answer, alleged that he received no notice of the sale and that the sale price of $25,000 was so inadequate as to constitute fraud and deceit. Plaintiffs moved for summary judgment and defendant opposed the motion on the ground that there was a disputed issue of fact, namely, the fair market value of the property, which defendant asserted he was entitled to offset against the indebtedness.

In the pretrial order, the trial court stated that defendant did not put in issue the sufficiency of the procedure whereby the trust deed was foreclosed. Defendant admitted that payments on the note were delinquent and plaintiffs were entitled to foreclose the collateral. However, defendant claimed that the price for which the property was purchased was sufficiently disproportionate to its reasonable value that he was entitled to assert as a defense a claim for credit on the indebtedness equal to the reasonable value of the property.

The trial court denied plaintiffs' motion for summary judgment and ruled that the alleged unfairness of a trustee's sale of the security to the beneficiary in Texas may be inquired into judicially when a subsequent action in Utah is brought for a deficiency judgment. The trial court acknowledged that under the law of Texas such judicial inquiry is not permitted, or, if allowed, its scope is most restricted. The court ruled that the policy of the state of Utah is clear and has been expressed in Section 57–1–32, U.C.A.1953, which provides that in an action to recover the balance due upon an obligation for which a trust deed was given as security, the court shall not render judgment for an

amount more than the amount by which indebtedness with interest, costs and expenses exceeds the fair market value of the property sold as of the date of sale.

The instant matter was tried before the court, which found that the sale of the property for $25,000 was so low as to be unconscionable. The court found that the fair market value of the property on the date of sale was $97,500, which the court offset against defendant's indebtedness to plaintiffs.[1]

On appeal, plaintiffs assert that the trial court should have granted their motion for summary judgment and applied the law of Texas to the facts in this action.

What is the law of Texas?

A sale regularly exercised under a power is equivalent to a strict foreclosure by a court of equity properly pursued. Article 3810, 12 Vernon's Texas Civil Statutes, governing sales under a deed of trust, provides that notice of such proposed sale shall be given by posting written notice thereof for three consecutive weeks prior to the day of sale in three public places in said county. There is no requirement that personal notice be given to the mortgagor.[2]

The amount bid in at a foreclosure sale is the proper amount to credit on the mortgagor's debt, if the sale were valid. If it should be found that the sale were invalid, then the proper amount to credit on the mortgagor's debt is the reasonable market value of the mortgagor's equity in the property at the time of the foreclosure sale.[3]

The fact that the property is worth substantially more than the balance owing on the note and substantially more than the price at which the beneficiary bought it at the foreclosure sale is not recognized by the law of Texas as a basis for invalidating such a sale. A trustee's sale will not be set aside merely because of inadequate price. There must be evidence of irregularity which caused or contributed to cause the property to be sold for a grossly inadequate price.[4]

A case directly in point is Koehler v. Pioneer Insurance Company,[5] which was an action to recover the balance due on a note after a trust deed foreclosure sale.

---

1. In the litigation between the parties there were other items involved in the total indebtedness, but they are not in issue in the instant appeal.
2. Koehler v. Pioneer American Insurance Company, Tex.Civ.App., 425 S.W.2d 889, 890, 891, 892 (1968).
3. Whalen v. Etheridge, Tex.Civ.App., 428 S.W.2d 824, 830 (1968).

4. White v. Lakewood Bank and Trust Company, Tex.Civ.App., 438 S.W.2d 129, 134 (1969); Crow v. Davis, Tex.Civ. App., 435 S.W.2d 176 (1968); Sparkman v. McWhirter, Tex.Civ.App., 263 S.W.2d 832, 833, 837 (1953).
5. Footnote 2, supra.

Defendant, Koehler, had executed a note in the sum of $100,000 and a deed of trust securing payment. Defendant defaulted in his payments, and the trustee, after posting notices, sold the property to plaintiff for $25,000, which was credited on the note. In the subsequent action on the note, plaintiff moved for and was granted summary judgment. On appeal, defendant asserted that the trial court erred in granting summary judgment because there was a disputed issue of fact as to whether the foreclosure sale was invalid due to the gross inadequacy of price. The appellate court observed that mere inadequacy of consideration, alone, does not render a foreclosure sale void, if the sale were legally and fairly made. The court stated:

> In the words of Justice Williams in Castle v. Appliance Buyers Credit Corporation, 410 S.W.2d 485 (Tex.Civ.App., 1966, no writ hist.), "The real theory of appellants' appeal seems to be nothing more than a collateral attack upon a trustee sale held prior to the institution of this suit. Appellants' contention that the consideration paid by appellee corporation for the property at the trustee sale was inadequate is in itself insufficient to constitute a valid attack on the sale."

In the instant action, the pretrial order specified that the defendant did not put in issue the sufficiency of the procedure whereby the trust deed was foreclosed. Under Texas law, if the sale were valid, the amount bid in at the foreclosure sale is the proper amount to credit on the mortgagor's debt. If the law of Texas were applicable to the instant action, the trial court erred and plaintiffs' motion for summary judgment should have been granted. Therefore, the issue to be resolved in this appeal is a choice-of-law question.

A review of the significant contacts in this action reveals that the situs of the property conveyed by the trust deed, the performance of the obligation of the note, and the residency of the plaintiffs were in Texas. Defendant in his answer admitted that he was a resident of Utah but testified at the trial that he was a resident of Fruita, Colorado. Defendant executed the note and trust deed in Colorado, and the property he traded as part of the transaction was located there.

> If the right to recover a deficiency is not prohibited by the law of the situs of the mortgaged property and the situs of the contract of mortgage indebtedness, the state of the forum has no interest in denying such right to deficiency allowed by the law of the situs, and will, generally speaking, give effect to that right, even though by a local statute that right to recover the deficiency is denied absolutely or conditionally (such statutes being ordinarily construed as having reference to deficiencies arising from foreclosures of mortgages on property within the state—* * *), unless

the policy behind such statute is regarded as a fundamental part of the public policy of the state, which will be violated by the enforcement of a right to deficiency, even one arising from a foreclosure without the state. * * *[6]

Defendant successfully asserted before the trial court that Section 57–1–32, U.C.A. 1953, constituted a public policy of this jurisdiction and the courts of this State need not give full faith and credit to the laws of Texas in contravention to the public policy of Utah. Defendant reasoned that the Legislature has deemed as inimical to the interest of the public the enforcement of personal liability upon an obligation secured by a trust deed without granting a credit to the extent of the fair market value of the property.

There are jurisdictions where anti-deficiency statutes have been construed as a legislative expression of public policy. In such instances, the courts, although admitting the validity of the contract in the state where it was executed and to be performed, have denied enforcement thereof by appropriate legal remedy, i. e., if the contract be contrary to the public policy of the forum, remedy will be denied.[7]

* * * But whether a forum statute would be applied to protect a defendant sued on a deficiency relating to foreign land, must depend on the interpretation of the statute in the light of its policy. * * *[8]

■ There are two aspects which must be considered in the interpretation of the forum statute. First, does the language of Section 57–1–32, U.C.A.1953, express a legislative intent to extend its protection to all debtors whose obligations are secured by trust deeds, regardless of the situs of the land? Secondly, is there a public policy in this jurisdiction that restricts plaintiffs' remedy?

. Section 57–1–32, U.C.A.1953, provides:

At any time within three months after *any sale of property under a trust deed, as hereinabove provided,* an action may be commenced to recover the balance due upon the obligation for which the trust deed was given as security, * * * Before rendering judgment, the court shall find the fair market value at the date of sale of the property sold. The court shall not render judgment for more than the amount

6.  136 A.L.R. 1057, 1059, Anno.—Conflict of Laws—Deficiency Judgment Acts, § 3.
7.  Federal Deposit Insurance Corp. v. Stensland, 70 S.D. 103, 15 N.W.2d 8 (1944); Younker v. Manor, 255 Cal.App.2d 431, 63 Cal.Rptr. 197 (1967); Bullington v. Angel, 220 N.C. 18, 16 S.E.2d 411, 136 A.L.R. 1054 (1941); also see for an in depth analysis 1960 Duke Law Journal 1, Currie and Lieberman, Purchase-Money mortgages and State Lines: A Study in Conflict-of-Laws Method.
8.  Ehrenzweig on Conflicts of Law, § 232, 2(a) (2), p. 611.

by which the amount of the indebtedness with interest and the costs and expenses of sale, including trustee's and attorney's fees, exceeds the fair market value of the property or interest therein sold as of the date of the sale, * *. [Emphasis added.]

The aforementioned emphasized language in the statute refers solely to the sale of property situated within Utah; the entire statutory scheme concerning trust deeds, as provided in Sections 57–1–19 through 57–1–36, could not have any extra-territorial effect. We must, therefore, conclude that the statutory protection extended solely to debtors whose obligations were secured by trust deeds on land in Utah.[9]

■ Finally, should plaintiffs be denied their remedy on the ground that it contravenes the public policy of the forum?

* * * Where the question has arisen in other jurisdictions it has gen-erally been held that recovery of a deficiency judgment otherwise allowable under the law of the situs of the mortgaged property and the contract indebtedness which secures it is not violative of the public policy of the State of the forum on grounds of public policy although contrary to the rule in effect in such state. * * * The traditional test used in determining whether the public policy of the forum prevents the application of otherwise applicable conflict-of-laws principles was well expressed by Justice Cardozo in Loucks v. Standard Oil Co. of New York, 224 N.Y. 99, 120 N.E. 198, to the effect that foreign law will not be applied if it "would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal." * * *[10]

---

9. See Provident Savings Bank & Trust Co. v. Steinmetz, 270 N.Y. 129, 200 N.E. 669 (1936) ; McGirl v. Brewer, 132 Or. 422, 280 P. 508, 285 P.2d 208 (1930) ; Fidelity-Bankers Trust Co. v. Little, 178 S.C. 133, 181 S.E. 913 (1935) ; Reconstruction Finance Corp. v. Mercury Realty Co. (U.S.D.C.E.D.Mich.S.D., 1951), 97 F.Supp. 491 ; 136 A.L.R. 1060, wherein it is stated : "And a statute of the forum in effect providing that in determining the amount of the deficiency the fair market value of the property at the time of sale, and not the amount for which the property was actually sold at the foreclosure sale, shall be considered, has been held to have no application in an action at the forum to recover a deficiency aris-ing from a mortgage foreclosure sale of property in another state, and to have been designed for protection of mortgagors owning property within the state, and not for protection of mortgagors owning property without the state. * * *" Also see 1960 Duke Law Journal 48, wherein it is observed that a legislature may make a reasonable classification, and it cannot be deemed a denial of equal protection of the law, where the legislature does not extend the statutory protection to residents who contract to purchase out-of-state land.

10. Goodman v. Nadler, 113 Ga.App. 493, 148 S.E.2d 480, 483 (1966) ; also see Lilienthal v. Kaufman, 239 Or. 1, 395 P.2d 543, 547 (1964).

Would the enforcement of plaintiff's remedy violate the fundamental law which forms a cornerstone of Utah's jurisprudence? We must respond in the negative. Not only does the language of Section 57–1–32, U.C.A.1953, indicate a legislative intent that the relief provided debtors is restricted to trust deeds on Utah land, but the underlying policy of the law, with the noted statutory exception, is otherwise. In excluded.

First National Bank of Salt Lake City v. Haymond,[11] this court stated:

> * * * Under our laws affecting the foreclosure of mortgages, we can see no escape from the conclusion that a mortgagee is entitled to have the mortgaged property sold under foreclosure sale, and, in the event the property does not sell for sufficient to satisfy the mortgage debt, to have a deficiency judgment entered in the usual way, notwithstanding the value of the mortgaged property is in excess of the debt owing to the mortgagee. * * * Moreover, to require the mortgagee to accept the mortgaged property in lieu of the money which the mortgagors have agreed to pay would be to make a contract for the parties contrary to their agreement. This the courts may not do. * * *

There is one other aspect of this appeal which merits comment, namely, under both Texas and Utah law, a sale, when made in compliance with the applicable statutes, is valid and binding and the rights and interests of the parties are fixed thereby.[12] In both jurisdictions, substantial inadequacy of price coupled with fraud, mistake or other unfair dealing is sufficient to justify a court of equity, upon timely motion, to set aside the sale and order a resale.[13] Of course, it is beyond the power of the courts of this State to set aside a sale in Texas, and defendant has failed to take any action in the courts of Texas. Defendant has strenuously urged that to grant plaintiffs' motion for summary judgment is tantamount to giving full faith and credit to a Texas in personam deficiency judgment, when there has been no judicial action and no personal jurisdiction over defendant in Texas. This contention misapprehends the nature of a foreclosure, which operates as a payment of the debt to the amount received at the sale. It is not a judgment, with any of its incidents, but is simply a record evidencing a debt, which can only be discharged by payment.[14]

A review of the record indicates no ground upon which the judgment of the

11. 89 Utah 151, 158, 57 P.2d 1401, 1405 (1936).
12. Cole v. Canton Mining Co., 59 Utah 140, 148, 202 P. 830 (1921).
13. First National Bank of Salt Lake City v. Haymond, footnote 11, supra.
14. 3 Jones on Mortgages (8th Ed.), § 1584, p. 19.

trial court can be sustained. This cause must be reversed and remanded to the trial court with an order to grant plaintiffs' motion for summary judgment. Costs are awarded to plaintiffs.

HENRIOD and ELLETT, JJ., concur.

CROCKETT, Chief Justice (dissenting).

It is my opinion that the trial court was entirely correct in refusing to arbitrarily fasten a plainly unconscionable deficiency upon the defendant personally without the latter ever having had an opportunity to contest it.

There are several important propositions to have in mind as a foundation to this review. The first is that it is a *judgment* of our District Court, which in fact had jurisdiction over the action and the parties who were properly brought before it. The second is that what is referred to as a "Foreclosure" of a trust deed in Texas was in no sense an action in court, with the parties properly brought before it, and judicial action thereon; and thus in no sense could it properly be regarded as having the dignity of a judgment. The third is that there should be kept clearly separate, two different aspects of the proceeding in Texas: (a) the aspect of the proceeding which is in rem, and which could only affect the real property there situated; and (b) the aspect which purported to reach and become binding upon the defendant personally.

Concerning (a) above, as will be seen from the authorities cited below, there cannot be acquired even in rem jurisdiction to affect the property without some proper service of process. But setting that question aside here, and directing attention to (b) above, it seems to me that it is true, a fortiori, that there is no proper basis whatsoever for a conclusion that jurisdiction was ever acquired over the defendant to bind him personally as to the Texas proceeding.

The fact which I regard as pivotal in this case is one which the pretrial order recites:

It is agreed between the parties that *personal notice of the sale under the terms of the trust deeds was not given to the defendant and that he did not have actual notice of the foreclosure sale.* It is further agreed between the parties that *no jurisdiction was ever obtained in the State of Texas* whereby *judicially determined deficiency judgment* could be obtained against the defendant.

There is no question but that the defendant's address was known to the plaintiffs, and to their counsel. Nevertheless, they made no effort whatsoever to serve the defendant with process; nor did they even take the trouble to mail him notice. Neither did they bother to inform or notify the defendant's manager, who was present at the motel. They apparently went through only the bare formality of posting

notices in three places in the county. Everyone realizes that this is largely fictional and is supposed to be supplementary to and substitute for actual notice only when there has been some bona fide effort to notify the defendant. The plaintiffs then purported to bid in the property for $25,000, a property which they themselves had had appraised 27 months previously at over $200,000. The defendant in his answer in this action affirmatively alleged (paragraph 5) that such a sale constituted fraud and deceit. This issue has never been tried, nor has the defendant had any opportunity to safeguard his interests, either in the purported sale in Texas, or to present and have determined the issue thus tendered herein.

It is elementary that in order for a judgment, decree or proceeding to affect one personally, he is entitled to be given a notice and an opportunity to be heard. See Tolman v. Salt Lake County, 20 Utah 2d 310, 437 P.2d 442; Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278. It is conceded that this notice may be either by personal service or by properly conforming to a prescribed form of constructive service *when personal service cannot be had*. But the method of constructive service employed cannot be something which is fictional and unrealistic; it must be something reasonably calculated to give the defendant notice. See Mullane v. Central Hanover Bank, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865. The requirement of giving full faith and credit under the U. S. Constitution does not preclude a collateral attack on the grounds of lack of jurisdiction. See Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577.

The pathway to justice in such a situation has been pointed out by the Arizona Supreme Court in the recent case of Laz v. Southwestern Land Co., 97 Ariz. 69, 397 P.2d 52, stating that it is not enough with respect to persons whose names and addresses are known, or very easily ascertainable, to simply give notice by publication. This principle was clearly declared and adhered to by the U. S. Supreme Court in Mullane v. Central Hanover Bank, referred to above. It involved the settling of a trust fund where some of the beneficiaries were not residents of New York and in all likelihood would not receive notice published in New York newspapers. The court stated:

> Accordingly we overrule appellant's constitutional objections to published notice insofar as they are urged on behalf of any beneficiaries whose interests or addresses are unknown to the trustee.

> *As to known present beneficiaries of known place of residence, however, notice by publication stands on a different footing.* Exceptions in the name of necessity do not sweep away the rule that within the limits of practicability *notice must be such as is reasonably calculated to reach interested parties.* Where the names and

post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency. * * * *The statutory notice to known beneficiaries is inadequate,* not because in fact it fails to reach everyone, but *because* under the circumstances *it is not reasonably calculated to reach those who could easily be informed by other means at hand.* However it may have been in former times, the mails today are recognized as an efficient and inexpensive means of communication. * * *

This doctrine was later applied by the U. S. Supreme Court in 1956 in the case of Walker v. Hutchinson City, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178, wherein it held that in condemnation proceedings, publication was not sufficient where the city had the names and addresses of the condemnees, saying: "Appellant's name was known to the city and was on the official records. Even a letter would have apprised him that his property was about to be taken and that he must appear if he wanted to be heard as to its value." Similar is Schroeder v. City of New York, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255. There the city filed proceedings to divert a stream away from the plaintiff's summer home. The U. S. Supreme Court held that where plaintiff's address was on the tax rolls, the city was obligated to make a good faith effort to locate him and that notice by publication was not sufficient.

In accord with the U. S. Supreme Court cases just cited is Pierce v. Board of County Commissioners, 200 Kan. 74, 434 P.2d 858, which bears directly on the question here involved. That action was by a landowner to set aside a sheriff's deed issued to a purchaser at a tax foreclosure sale. The Supreme Court of Kansas held that the original owners of the land were not given due process of law when they had no actual notice of the sale, and where notice was given by publication only, when the names and addresses of the owners were readily available to the county.[1]

It is submitted that the fact situation thus far shown in this case: where the plaintiff knew the name and address of the defendant; where he made no effort whatsoever to notify the defendant and thus acquired no jurisdiction or semblance thereof over the person of the defendant; where this purported sale was thus without the actual or constructive knowledge of the defendant; and where the property was bid in by

1. Decisions of other jurisdictions to the effect that constructive notice by publication and posting is sufficient only when the names and addresses are unknown are: Minnesota, Etzler v. Mondale, 266 Minn. 353, 123 N.W.2d 603; Oklahoma, Bomford v. Socony Mobil Oil Co., Okl., 440 P.2d 713; Hawaii, Manley v. Nelson, 50 Haw. 484, 524, 443 P.2d 155.

# 184

plaintiff at a price which was but a small fraction of the value the parties had themselves placed upon it; and which the defendant alleges was accomplished by fraud and deceit, do not present a situation which requires the courts of the state of Utah to give "full faith and credit" to any such proceeding as it affects the defendant personally. To do so would be contrary to principles of justice and equity, and to the well-reasoned authorities cited above, and contrary to the law and public policy of this State.[2]

It is for the foregoing reasons that I believe the trial judge was indisputably correct in his view that the defendant had not been accorded due process of law, had never had his day in court, and that these should be allowed him in this action. I therefore would affirm his ruling, permit the defendant to contest the issues he seeks to raise, and determine the controversy between these parties on its merits. (All emphasis added.)

TUCKETT, J., concurs in the dissenting opinion of CROCKETT, C. J.

2. See Sec. 57-1-32, U.C.A.1953 (Pocket Supp.), which declares that: " * * * after any sale of property under a trust deed * * * the court shall find the *fair market value of the property at the date of sale* * * * [and] * * * shall not render judgment for more than the amount by which the amount of the indebtedness with interest and the costs and expenses of sale * * * exceeds

the fair market value of the property." In this respect I commend and subscribe to the quotation in the main opinion from Goodman v. Nadler,—see its footnote 10, which in turn quotes Justice Cardozo, "that foreign law will not be applied if it would violate some fundamental principle of justice * * * " as being applicable in the instant case.