*1298
 
 OPINION
 

 Per Curiam:
 

 FACTS
 

 Pentax Corporation (“Pentax”) is a corporation headquartered in Colorado which distributes cameras and camera accessories in the United States. Sam Boyd, Jr. is president of Price Mart Corporation, a Nevada corporation, which incorporated in July 1990. Price Mart ordered, on credit, a disputed quantity of merchandise from Pentax. Pentax’s records indicate that all such merchandise was sold and shipped “FOB” from Englewood, Colorado, between December 1990 and February 1991, inclusive. Price Mart filed a bankruptcy petition in February 1991. Having failed to perfect its security interest in the inventory delivered to Price Mart, Pentax was unable to reclaim any of its merchandise through the bankruptcy proceedings.
 

 Boyd, in his corporate capacity, signed a document dated July 18, 1990, entitled “credit application and renewal.” The document lists Price Mart as the “customer” and Sam Boyd, Jr. as “owner/president.” On the reverse side of the credit application is a document entitled “guarantee,” which states that the guarantor agrees to unconditionally guarantee current or future indebtedness for which the “customer” is obligated to Pentax. The guarantee also includes terms which allow Pentax to release or surrender the security without consent of the guarantor. Boyd admitted signing the guarantee which contained blank spaces. The guarantee, however, included spaces for a “date” and the name of the “customer” which were left blank. The last line of the guarantee states: “This Guarantee shall be governed in accordance with the laws of the State of Colorado.”
 

 The guarantee and credit application were preliminary to any agreement for the sale of goods, and were completed prior to shipment of any merchandise from Pentax to Price Mart. A series of order forms constituted the actual contracts for sale of merchandise.
 

 Boyd contends that no contractual relationship was formed because Pentax used a “credit application and renewal” form in lieu of an “application for open account” form. Ergo, the guarantee was invalid, because there was no underlying contractual relationship to which the guarantee applied.
 

 Boyd maintains that he was not aware he had signed a guarantee; Pentax insists that Boyd signed the guarantee in specific response to an indication that his signature would expedite approval of credit.
 

 
 *1299
 

 DISCUSSION
 

 Choice of Law
 

 In Owens-Corning v. Texas Communications, 104 Nev. 556, 763 P.2d 335 (1988), this court held that a choice of law provision contained in a guarantee should prevail despite a conflicting choice of law provision contained in the loan documents that were being guaranteed. We have also held that “parties are permitted within broad limits to choose the law that will determine the validitv and effect of their contract.” Sievers v. Diversified Mtg. Investors, 95 Nev. 811, 815, 603 P.2d 270, 273 (1979).
 
 Sievers
 
 imposed two requirements for the validity of a choice of law provision: “The situs fixed by the agreement . . . must have a substantial relation with the transaction, and the agreement must not be contrary to the public policy of the forum.”
 
 Id.
 
 Both requirements are met in the instant case. First, Pentax is headquartered in Colorado and the merchandise in question was shipped from Colorado. Clearly, Colorado has a substantial relation with the transaction.
 
 See
 
 Engel v. Ernst, 102 Nev. 390, 724 P.2d 215 (1986). Second, no public policy concerns are implicated by this litigation. Accordingly, the choice of Colorado law specified in the guarantee, controls.
 

 Failure to Read the Guarantee
 

 Boyd claims not to have read the guarantee, nor to have been aware that he signed it. Other depositional testimony contradicts Boyd’s claim. However, this factual dispute does not create a genuine issue of material fact. Under Colorado law, parties may be held to contracts which they did not read.
 
 See
 
 Rasmussen v. Freehling, 412 P.2d 217, 219 (Colo. 1966). Becaqse Boyd is a merchant, and the one-page “guarantee” was conspicuously labeled as such, Boyd’s failure to read the guarantee is not relevant in determining its validity.
 

 Statute of Frauds
 

 Under both Colorado and Nevada law, contracts of guarantee are subject to the statute of frauds.
 
 See
 
 Colo. Rev. Stat. § 38-10-112(1)(b) (1973); NRS 111.220(2). To satisfy the statute of frauds, a contract must contain certain essential elements: “[A] note or memorandum ‘must show on its face or by reference to other writings, first, the names of the parties . . .; second, the terms and conditions of the contract; third, the interest or property affected; and fourth, the consideration to be paid therefor.’ ”
 
 *1300
 
 L.U. Cattle Co. v. Wilson, 714 P.2d 1344, 1347 (Colo. Ct. App. 1986) (quoting Micheli v. Taylor, 159 P.2d 912, 913 (Colo. 1945)). Concerning guarantees, the name of the party whose debt is being guaranteed is the interest affected and is, therefore, one of the essential terms. Since the guarantee at issue here lacks one of the essential terms, it is, standing alone, indefinite and nonbinding.
 

 As indicated by the above-quoted language in
 
 L. U. Cattle Co.,
 
 however, several writings may be construed together to supply an essential term if there is reference in one document to another document. “‘[T]he essential terms of the agreement must be ascertained by the writing itself, or by reference in it to something else.’ ” Carlson v. Boryla, 490 P.2d 700, 703 (Colo. Ct. App. 1971) (quoting Salomon v. McRae, 47 P. 409, 410 (Colo. Ct. App. 1896) (emphasis added in
 
 Carlson)).
 
 The court in Bennett v. Moring, 522 P.2d 741, 743 (Colo. Ct. App. 1974), clarified the requisite connection between writings:
 

 Where more than one writing is used to satisfy the requirements of the statute of frauds, some nexus between the writings must be shown. While the phrase “internal reference” is often used to describe the requisite nexus, it need not be in the form of express cross-references between the writings. Instead, the requirement may be satisfied by parol evidence where, as here, it is apparent that the memo-randa referred to the same subject matter or transaction.
 

 Bennett,
 
 522 P.2d at 743 (citing Haspray v. Pasarelli, 79 Nev. 203, 380 P.2d 919 (1963)) (citations omitted). The credit application and guarantee, construed together, clearly refer to the same transaction, and the customer name on the credit application is the same customer referenced in the guarantee. Further, the blank spaces in the guarantee did not render it indefinite, as long as the intent of the parties was readily ascertainable. Hofmann Company v. Meisner, 497 P.2d 83 (Ariz. Ct. App. 1972); James Talcott, Inc. v. Fullerton Cotton Mills, 208 F.2d 81 (5th Cir. 1953).
 

 Parol Evidence
 

 The Colorado Supreme Court has held: “Parol evidence is admissible to explain or supplement the terms of an agreement, but not to vary or contradict them.” Cheyenne Mountain School D. v. Thompson, 861 P.2d 711, 715 (Colo. 1993). Although parol evidence is admissible to clarify ambiguities in a contract,
 
 *1301
 
 the existence of an ambiguous provision only allows the admission of evidence to clarify the intent of the parties with respect to such provision. Matter of Applications for Water Rights, 838 P.2d 840, 850 (Colo. 1992). Thus, in the present case, the ambiguous blank space would allow admission of parol evidence which serves to explain what information should have been entered therein, but would disallow parol evidence relating to the remainder of the guarantee. Since the parol evidence proffered by Boyd related to the remainder of the guarantee, it is inadmissible.
 

 Pentax’s attempt to introduce parol evidence was likewise unavailing because the body of the guarantee is not ambiguous.
 

 Failure to Perfect Security Interest
 

 With regard to the perfection of a security interest, Colorado law provides:
 

 Except as otherwise provided in this subsection (1), perfection and the effect of perfection or nonperfection of a security interest in collateral are governed by the law of the jurisdiction where the collateral is located when the last event occurs on which the assertion that the security interest is perfected or unperfected is based.
 

 Colo. Rev. Stat. Ann. § 4-9-103(b) (West 1992). The collateral was located in Nevada. Therefore, as a matter of Colorado law, the consequences of Pentax’s failure to perfect its security interests are governed by Nevada law.
 

 Although Nevada’s relevant statute, NRS 104.3606,
 
 [1]
 
 was
 
 *1302
 
 recently repealed (1993 Nev. Stat. ch. 402, § 108, at 1316), this case commenced in 1991, while NRS 104.3606 remained in effect.
 
 [2]
 
 NRS 104.3606(l)(a) allows a guarantor, by his express consent to impairment of collateral, to waive any related defense. Here, the guarantee provides, in pertinent part: “You may at any time without consent of, or notice to, the undersigned, and without impairing or releasing the obligations of the undersigned hereunder: ... (2) Sell, exchange, release, surrender, realize upon or otherwise deal with in any manner any property at any time securing the indebtedness hereby guaranteed.” Similar waivers have been upheld in a number of other jurisdictions.
 
 See, e.g.,
 
 Richard L. Epling,
 
 Waiver Clauses in Commercial Loan and Guaranty Agreements,
 
 15 UCC L.J. 231, 242-43 (1983); Daniel E. Murray,
 
 Secured Transactions
 
 — Defenses
 
 of Impairment and Improper Care of Collateral,
 
 79 Com. L.J. 265, 272-73 (1974); U.C.C. § 3-606 n.26 (1991). Accordingly, the guarantee contains an effective waiver, thus preventing Boyd from asserting any defense based upon Pentax’s failure to perfect a security interest in the collateral. Boyd is, therefore, liable for the full extent of Price Mart’s debt to Pentax, which as previously discussed, must be determined on remand.
 

 For the reasons discussed above, we reverse the summary judgment for Boyd, and remand the case for trial to determine the amount of Pentax’s damages, with directions to enter partial summary judgment in favor of Pentax regarding Boyd’s liability on the guarantee.
 

 [1]
 

 NRS 104.3606 provides:
 

 Impairment of recourse or of collateral.
 

 1. The holder discharges any party to the instrument to the extent that without such party’s consent the holder:
 

 (a)
 
 Without express reservation of rights
 
 releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary; or
 

 (b)
 
 Unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.
 

 2. By express reservation of rights against a party with a right of recourse the holder preserves:
 

 (a) All his rights against such party as of the time when the instrument was originally due; and
 

 
 *1302
 
 (b) The right of the party to pay the instrument as of that time; and
 

 (c) All rights of such party to recourse against others.
 

 (Added to NRS by 1965, 838)
 

 (Emphasis added.)
 

 [2]
 

 NRS 193.075 provides:
 

 1. Any repeal, express or implied, of any statute shall not release or extinguish any penalty, forfeiture or liability incurred under such statute, unless the repealing act expressly so provides.
 

 The repealing act did not so provide.