**133 Nev., Advance Opinion 107**

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

FRANCO SORO, AN INDIVIDUAL;
MYRA TAIGMAN-FARRELL, AN
INDIVIDUAL; ISAAC FARRELL, AN
INDIVIDUAL; KATHY ARRINGTON,
AN INDIVIDUAL; AND AUDIE
EMBESTRO, AN INDIVIDUAL,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
JERRY A. WIESE, DISTRICT JUDGE,
Respondents,
  and
AMERICA FIRST FEDERAL CREDIT
UNION, A FEDERALLY CHARTERED
CREDIT UNION,
Real Party in Interest.

No. 72086

FILED

DEC 28 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Original petition for writ of mandamus and/or prohibition arising from the district court's denial of a motion to dismiss in a foreclosure deficiency action.

*Petition denied.*

Reid Rubinstein Bogatz and Charles M. Vlasic, III, Jaimie Stilz, and I. Scott Bogatz, Las Vegas,
for Petitioners.

Ballard Spahr, LLP, and Matthew D. Lamb and Joseph P. Sakai, Las Vegas;
Ballard Spahr, LLP, and Mark R. Gaylord, Salt Lake City, Utah,
for Real Party in Interest.

17-902731

BEFORE SILVER, C.J., TAO and GIBBONS, JJ.

*OPINION*

By the Court, SILVER, C.J.:

In this opinion, we determine whether Utah's antideficiency statute applies extraterritorially to a Nevada deficiency action. Petitioners moved to dismiss the underlying case on the ground that it was time-barred by Utah's antideficiency statute, which they maintained applied to the dispute pursuant to the parties' choice-of-law provision. The district court considered that statute, concluded it did not apply extraterritorially, and denied petitioners' motion to dismiss. This original petition for a writ of mandamus and/or prohibition seeking to compel the dismissal of the underlying action followed.

The Nevada Supreme Court has notably addressed the application of antideficiency statutes in *Key Bank of Alaska v. Donnels*, 106 Nev. 49, 787 P.2d 382 (1990); *Branch Banking & Trust Co. v. Windhaven & Tollway, LLC*, 131 Nev. ___, 347 P.3d 1038 (2015); and *Mardian v. Michael & Wendy Greenberg Family Trust*, 131 Nev. ___, 359 P.3d 109 (2015). Read together, these cases provide that, in a deficiency action where the parties have an enforceable choice-of-law provision, before the district court applies the antideficiency statute from the parties' chosen jurisdiction, the court must first determine whether that statute, by its terms, has extraterritorial reach. *See Mardian*, 131 Nev. at ___, 359 P.3d at 111-12; *Branch Banking*, 131 Nev. at ___, 347 P.3d at 1041-42; *Key Bank*, 106 Nev. at 52-53, 787 P.2d at 384-85. In this opinion we clarify that, if a party seeks to apply another jurisdiction's antideficiency statute to a Nevada deficiency action, and the courts of that jurisdiction have addressed the statute's extraterritorial application, we will follow that jurisdiction's determination regarding this

Court of Appeals
of
Nevada

(O) 1947B

2

issue rather than independently construe the antideficiency statute to assess whether it can be applied extraterritorially. Here, because the Utah Supreme Court has already determined that Utah's antideficiency statute does not apply extraterritorially, that decision controls our resolution of this issue. As a result, we conclude the district court properly denied petitioners' motion to dismiss and we therefore deny the petition.

## FACTS AND PROCEDURAL HISTORY

In 2002, real party in interest America First Federal Credit Union (America First) loaned petitioners Franco Soro, Myra Taigman-Farrell, Isaac Farrell, Kathy Arrington, and Audie Embestro (collectively Soro) $2.9 million for the purchase of a mini-mart business. The loan was secured by real property in Mesquite, Nevada. The promissory note specified that Utah law governed the agreement and related loan documents.

Soro defaulted, and America First proceeded with a nonjudicial foreclosure sale of the Mesquite property in accordance with Nevada law. On October 4, 2012, America First purchased the Mesquite property at a trustee's sale for a little over $1.2 million, resulting in a deficiency on the loan balance of approximately $2.4 million, including interest and fees.

Six months after the foreclosure sale, America First filed a deficiency action in Nevada under NRS 40.455(1). Soro then moved to dismiss the action pursuant to NRCP 12(b)(1), arguing that the agreement's forum selection clause divested Nevada of jurisdiction. The district court agreed, but on appeal the Nevada Supreme Court reversed, concluding that the forum selection clause was permissive and Nevada was a proper forum for a deficiency action. *See Am. First Fed. Credit Union v. Soro*, 131 Nev. ___, 359 P.3d 105 (2015).

On remand, Soro filed another motion to dismiss, this time under NRCP 12(b)(5), arguing America First's deficiency action was time-barred by Utah's three-month statute of limitations. Critically, although Nevada's antideficiency statute allows a party to bring a deficiency action within six months of the property's foreclosure sale, Utah's antideficiency statute imposes a three-month statute of limitations. *See* NRS 40.455(1); Utah Code Ann. § 57-1-32 (LexisNexis 2010). The district court concluded that Utah's antideficiency statute does not apply extraterritorially and denied the motion. Thereafter, Soro petitioned for a writ of mandamus and/or prohibition seeking to overturn the denial of the motion to dismiss.

## ANALYSIS

In the petition, Soro contends that the district court should have dismissed the deficiency action because the complaint is time-barred by Utah's antideficiency statute. Specifically, Soro asserts that, under *Key Bank* and *Mardian*, the parties' choice-of-law provision in the promissory note requires the district court to apply Utah law, and consequently, America First was required to bring the deficiency action within three months of the foreclosure sale pursuant to Utah Code Ann. § 57-1-32 (LexisNexis 2010). Soro further contends that the district court erred by concluding that Utah Code Ann. § 57-1-32 (LexisNexis 2010) does not apply extraterritorially because, under *Key Bank* and *Branch Banking*, the Utah statute is illustrative, not exclusive. America First counters that *Mardian* and *Branch Banking* are inapposite and that, under *Key Bank*, Utah's antideficiency statute does not apply extraterritorially.

### Propriety of writ relief

We first consider whether the petition for writ relief is proper. The grant of a writ petition is extraordinary relief that is rarely warranted, and, for reasons of judicial economy, we do not often entertain writ petitions

challenging the denial of a motion to dismiss. *See Smith v. Eighth Judicial Dist. Court*, 113 Nev. 1343, 1344-45, 950 P.2d 280, 281 (1997). Nevertheless, we may exercise our discretion to consider petitions in cases where "an important issue of law needs clarification and considerations of sound judicial economy and administration militate in favor of granting the petition." *State, Office of the Attorney Gen. v. Eighth Judicial Dist. Court (Anzalone)*, 118 Nev. 140, 147, 42 P.3d 233, 238 (2002).

*Key Bank*, *Branch Banking*, and *Mardian* address the effect of a valid choice-of-law provision on a deficiency action and set forth a framework for analyzing the antideficiency statute from the chosen jurisdiction to determine whether it can apply extraterritorially. This case, however, presents a new situation because the Utah Supreme Court has already analyzed the extraterritorial application of the antideficiency statute at issue here, Utah Code Ann. § 57-1-32 (LexisNexis 2010), in *Bullington v. Mize*, 478 P.2d 500 (Utah 1970). Our supreme court has not addressed whether Nevada courts, in determining the extraterritorial reach of another state's antideficiency statute, must follow that jurisdiction's dispositive caselaw. We therefore exercise our discretion to address the petition and clarify this point in Nevada law. *See Anzalone*, 118 Nev. at 147, 42 P.3d at 238. We review de novo the district court's decision. *See Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008) (addressing questions of law de novo); *see also Parametric Sound Corp. v. Eighth Judicial Dist. Court*, 133 Nev. ___, ___, 401 P.3d 1100, 1104 (2017) (reviewing a question of law de novo in the context of a writ petition). *Whether Utah's antideficiency statute applies*

The question before this court is whether Utah Code Ann. § 57-1-32 (LexisNexis 2010) applies to bar America First's deficiency action.

Although Soro frames this issue as a conflict-of-laws question, contending that the parties' choice-of-law provision requires this court to apply Utah Code Ann. § 57-1-32 (LexisNexis 2010),[1] this argument bypasses the underlying question of whether that statute can project extraterritorially. *See Key Bank*, 106 Nev. at 52-53, 787 P.2d at 384-85 (considering whether Alaska's antideficiency statute applied to a Nevada deficiency action where Alaska law otherwise governed the lawsuit). In short, if Utah's statute cannot apply extraterritorially, then there is no conflict of law.

We begin our analysis by reviewing the three cases upon which Soro and America First rely: *Key Bank*, *Branch Banking*, and *Mardian*. In *Key Bank*, the parties contracted for a loan secured by a deed of trust on real property in Nevada. *Id.* at 51, 787 P.2d at 383. Under a choice-of-law provision contained in the promissory note, Alaska law governed the debt memorialized in that document. *See id.* at 52, 787 P.2d at 384. The borrowers in *Key Bank* defaulted, and the lender foreclosed on the property and later sued in Nevada to recover the deficiency. *See id.* at 51, 787 P.2d at 383. The parties disputed whether Alaska's antideficiency statute applied in light of their choice-of-law provision. *Id.* at 52, 787 P.2d at 384. The Nevada Supreme Court determined that Alaska law governed the action pursuant to the parties' choice-of-law provision, but ultimately concluded Alaska's antideficiency statute did not apply extraterritorially to bar the action. *Id.* at 52-53, 787 P.2d at 384-85. In reaching this decision, the court scrutinized the statute's structure and language and determined

---

[1]While America First disputes whether the Utah statute has extraterritorial reach, it does not dispute the enforceability of the underlying choice-of-law provision.

that the statute showed "a clear intent to limit the effect of the statute to foreclosures" within Alaska.[2] *Id.* at 53, 787 P.2d at 384-85. Thus, under *Key Bank*, the parties' valid choice-of-law provision will control, but, before applying the chosen jurisdiction's antideficiency statute to a Nevada deficiency action, the court must determine whether that statute, by its terms, can apply extraterritorially.

While *Key Bank* dealt with the extraterritorial application of another state's antideficiency statute to a Nevada deficiency action involving Nevada real property, *Branch Banking* and *Mardian* dealt with the application of Nevada's antideficiency statute, NRS 40.455, to Nevada deficiency actions where the foreclosure took place in another state. In these latter cases, the parties secured their loans with real property outside Nevada. *Mardian*, 131 Nev. at ___, 359 P.3d at 110; *Branch Banking*, 131 Nev. at ___, 347 P.3d at 1039. The parties in *Branch Banking* agreed Nevada law would govern the note, but Nevada and Texas would both have jurisdiction in the event of a future dispute, 131 Nev. at ___, ___, 347 P.3d at 1039, 1042, whereas in *Mardian* the parties' agreement included a Nevada choice-of-law provision, 131 Nev. at ___, 359 P.3d at 110. In each case, the borrower defaulted and the lender sued the borrower in Nevada to recover for a deficiency following the property's foreclosure sale. *Mardian*, 131 Nev. at ___, 359 P.3d at 110-11; *Branch Banking*, 131 Nev. at ___, 347 P.3d at 1039.

---

[2]The court based its decision on the antideficiency statute's use of offsetting commas to highlight other Alaskan statutes, including a statute that expressly referenced deed of trust conveyances of property located specifically in Alaska. *Id.* at 52-53, 787 P.2d at 384-85.

*Branch Banking* scrutinized NRS 40.455, Nevada's antideficiency statute, which at that time allowed for a deficiency judgment "within 6 months after the date of the foreclosure sale or the trustee's sale held pursuant to NRS 107.080." 131 Nev. at ___, 347 P.3d at 1040. The court considered whether this statute allowed a deficiency action to proceed in Nevada where the lender foreclosed on property located in another state and consequently did not foreclose "pursuant to NRS 107.080." *Id.* at ___, 347 P.3d at 1039. After examining the structure of the statute and its context in the statutory scheme, the court concluded the statute did not bar the Nevada deficiency action. *See id.* at ___, 347 P.3d at 1041-42. In particular, the court reasoned that NRS 40.455(1) did not specifically address nonjudicial foreclosure sales involving property within another state, and Nevada's statutory scheme contemplates a party's ability to foreclose on property located in another state and thereafter bring a deficiency action in Nevada. *See id.* at ___, 347 P.3d at 1041. Thus, *Branch Banking* provides additional framework for interpreting an antideficiency statute to determine whether it will bar a deficiency action.

In *Mardian*, the supreme court considered the effect of the parties' choice-of-law provision and thereafter determined whether the deficiency action was time-barred by Nevada's antideficiency statute. 131 Nev. at ___, 359 P.3d at 111-12. The court in *Mardian* applied *Key Bank* to conclude that the parties' choice-of-law provision controlled and extended *Key Bank*'s holding to statutory limitations periods, thus requiring the parties to abide by the limitations period set forth in Nevada's antideficiency statute. *Id.* at ___, 359 P.3d at 111. The court next addressed whether Nevada's antideficiency statute barred the action where the subject property was outside the forum and the lender did not follow

Nevada's foreclosure procedures. *Id.* at ___, 359 P.3d at 111-12. Citing to *Branch Banking*, and without interpreting Nevada's antideficiency statute, the court in *Mardian* concluded that the lender's foreclosure in another state pursuant to that state's foreclosure rules did not bar the action. *Id.* at ___, 359 P.3d at 112. But citing to Nevada law addressing NRS 40.455's statute of limitations, the court ultimately concluded that the lender's failure to apply for a deficiency judgment within the statutory limitations period barred the action. *Id.* at ___, 359 P.3d at 112-13. Thus, *Mardian* reinforces that parties in a deficiency action are generally bound by their choice-of-law provision.[3]

In sum, under *Key Bank*, *Branch Banking*, and *Mardian*, the court presiding over a deficiency action must first determine whether the parties have an enforceable choice-of-law provision and, if so, thereafter determine whether the chosen jurisdiction's antideficiency statute can apply extraterritorially. On the second step, *Key Bank* and *Branch Banking* provide a framework for analyzing the statute's structure, language, and context to make that determination. But these cases do not address whether, before analyzing another state's antideficiency statute, Nevada courts must first consider whether the chosen jurisdiction's courts have already determined the statute's extraterritorial reach and, if so, apply that ruling.

In considering this question, we again turn to *Mardian*. There, the Nevada Supreme Court, in addressing whether Arizona or Nevada law applied, held "that because of the choice-of-law provision, Nevada law—

---

[3]We have considered the arguments asserting that *Mardian* is inapplicable in the present case and reject those arguments as without merit in accordance with our decision.

particularly Nevada's limitations period, *see* NRS 40.455(1)—applie[d] in th[at] case." *Mardian*, 131 Nev. at ___, 359 P.3d at 111. And as detailed above, in determining whether the lender timely applied for a deficiency judgment, the court considered Nevada caselaw construing the applicable statute of limitations. *See id.* at ___, 359 P.3d at 112-13. Thus, *Mardian* demonstrates that, when parties in a deficiency action have a valid choice-of-law provision, their chosen state's antideficiency statutes, as well as its caselaw interpreting those statutes, will control the action. This implication is echoed in other Nevada cases where our supreme court has applied another state's caselaw based on a choice-of-law provision. *See Pentax Corp. v. Boyd*, 111 Nev. 1296, 1299-1301, 904 P.2d 1024, 1026-28 (1995) (applying Colorado's statutes and caselaw pursuant to a choice-of-law provision); *Tipton v. Heeren*, 109 Nev. 920, 922 n.3, 923-24, 859 P.2d 465, 466 n.3, 466-67 (1993) (concluding that a Wyoming choice-of-law provision controls, and considering Wyoming caselaw in construing Wyoming's statutes). In the present context, we therefore hold that if the parties have a valid choice-of-law provision, and the controlling state's courts have addressed whether that state's antideficiency statute projects extraterritorially, we will adhere to that caselaw and not independently interpret the statute.

Here, the parties agree their choice-of-law provision is valid, and we therefore conclude Utah law governs the deficiency action. Thus, we must next determine whether Utah Code Ann. § 57-1-32 (LexisNexis 2010), Utah's antideficiency statute, may apply extraterritorially to a deficiency action in Nevada. That statute states, in relevant part, that "[a]t any time within three months after any sale of property under a trust deed as provided in [Utah Code Ann. §§] 57-1-23, 57-1-24, and 57-1-27

[(LexisNexis 2010)], an action may be commenced to recover the balance due." The parties expend significant energy applying the analyses of the statutes at issue in *Key Bank* and *Branch Banking* to Utah Code Ann. § 57-1-32 (LexisNexis 2010) to argue whether that statute is illustrative or exclusive. However, in *Bullington*, 478 P.2d 500, the Utah Supreme Court previously addressed whether this statute applies extraterritorially, and we need not embark upon an exhaustive analysis of the statute under the framework set forth in *Key Bank* and *Branch Banking* if *Bullington* is determinative here.

In *Bullington*, the Utah Supreme Court considered whether Texas or Utah law applied to a deficiency action. 478 P.2d at 501. There, the borrower secured a deed of trust with real property in Texas. *Id.* After the borrower defaulted, the lenders foreclosed on the property, purchased it for $25,000, and sued in Utah to recover the unpaid balance. *Id.* at 500-01. The borrower argued the purchase price was unconscionably low; but while Utah law took into account the property's fair market value in a deficiency action, Texas law did not. *Id.* at 501-02. In determining the underlying conflict of law question, the Utah Supreme Court addressed the 1953 version of Utah Code Ann. § 57-1-32 as a whole and considered whether "the language of [that statute] express[es] a legislative intent to extend its protection to all debtors whose obligations are secured by trust deeds, regardless of the situs of the land." *Id.* at 503. Noting that the statute's language "refers solely to the sale of property situated within Utah," the Utah Supreme Court concluded "the entire statutory scheme concerning trust deeds . . . could not have any extra-territorial effect," and, therefore, the court held "the statutory protection extended solely to debtors whose obligations were secured by trust deeds on land in Utah." *Id.*

As the relevant portion of Utah Code Ann. § 57-1-32 (LexisNexis 2010) has remained substantively unchanged since *Bullington* was decided,[4] we conclude that *Bullington*'s analysis still applies. And although *Bullington* concerned fair market value rather than the limitations period, the Utah Supreme Court addressed the statute as a whole and concluded that "the entire statutory scheme" does not have extraterritorial effect. 478 P.2d at 503. Thus, while *Bullington* did not specifically address the choice-of-law issue presented here, that difference does not change our analysis. Indeed, our application of *Bullington* to this matter is consistent with

---

[4]When *Bullington* was decided, the statute in relevant part read:

> At any time within three months after any sale of property under a trust deed, *as hereinabove provided,* an action may be commenced to recover the balance due upon the obligation for which the trust deed was given as security . . . .

*Bullington,* 478 P.2d at 503 (quoting former Utah Code Ann. § 57-1-32 (1953)). In comparison, Utah Code Ann. § 57-1-32 (LexisNexis 2010) now reads, in relevant part:

> At any time within three months after any sale of property under a trust deed *as provided in Sections 57-1-23, 57-1-24, and 57-1-27*, an action may be commenced to recover the balance due upon the obligation for which the trust deed was given as security. . . .

(Emphasis added.)

We have carefully reviewed the referenced statutes and their revisions since *Bullington*, and note those statutes still demonstrate the requirement of a substantial connection to Utah. Therefore, in the absence of any clear change in the statutory scheme or a pronouncement from the Utah Supreme Court indicating the law on this point has changed, *Bullington* remains in force and guides the outcome here pursuant to the parties' choice-of-law provision.

Utah's long-standing presumption against giving its statutes extraterritorial effect absent clear language requiring a contrary result. *See Nevares v. M.L.S.*, 345 P.3d 719, 727 (Utah 2015) (explaining that, under Utah law, "unless a statute gives a clear indication of an extraterritorial application, it has none" (internal quotation marks omitted)).

Because Utah's Supreme Court has decided Utah Code Ann. § 57-1-32 (LexisNexis 2010) does not project itself extraterritorially, we follow that precedent and do not independently construe the statute. The foreclosed-upon property was located in Nevada, not Utah, and pursuant to *Bullington*, Utah Code Ann. § 57-1-32 (LexisNexis 2010) does not apply. *Bullington*, 478 P.2d at 503. Accordingly, America First was not barred by Utah's three-month statute of limitations and timely filed its deficiency action in Nevada within the controlling six-month limitations period. We therefore conclude the district court correctly denied Soro's motion to dismiss, as America First timely filed suit in this case.

## CONCLUSION

When a party seeks to apply another state's antideficiency statute to a Nevada deficiency action pursuant to a valid choice-of-law provision, the Nevada court must first look to the chosen jurisdiction's caselaw before independently construing the statute. If the courts of the chosen jurisdiction have already determined whether the statute projects extraterritorially, the Nevada court must apply that law. Under Utah law, Utah Code Ann. § 57-1-32 (LexisNexis 2010) does not apply extraterritorially and, therefore, does not bar the underlying action.

Accordingly, the district court properly denied the motion to dismiss and, as a result, we deny this petition.[5]

_____, C.J.
Silver

We concur:

_____, J.
Tao

_____, J.
Gibbons

---

[5]In light of this opinion, we vacate the stay imposed on the district court proceedings in this matter, Eighth Judicial District Court Case No. A-13-679511-C, by our April 6, 2017, order.