MINERS & MERCHANTS SAVINGS BANK, Appellant
v.
COMER, et al., Respondents

(140 N.W.2d 390)

(File No. 10253.  Opinion filed February 23, 1966)

T. R. Johnson, Danforth, Danforth & Johnson, Sioux Falls, for plaintiff and appellant.

Woods, Fuller, Shultz & Smith, Sioux Falls, for defendant and respondent Reinhard Bros. Co.

SMITH, Commissioner.

By its complaint the plaintiff Bank prays for judgment on a promissory note executed by Comer, and a written contract executed by Reinhard Brothers Company which in terms guarantees payment of the Comer note. The defendant, Reinhard Brothers Company, pleaded facts which it asserted discharged it from liability under our statutes. The trial court held Reinhard Brothers Company to have been discharged. The appeal is by the Bank.

Our convenience will best be served by developing the material facts in the course of our discussion, and by referring to the parties as the Bank, Comer, and Reinhard.

We are told that the undertaking of the promissor, Reinhard, was original and independent, and hence it was not entitled to exoneration as a mere guarantor.

A guaranty is a promise to answer for the debt, default, or miscarriage of another person. SDC 26.0101. It is a contract on the part of one person which is collateral to a primary or principal obligation on the part of another. One who signs a contract of guaranty of payment upon a negotiable instrument assumes a separate, collateral and secondary obligation. He is not an original contractor. 11 Am.Jur., 2d, Bills & Notes, § 533; Northern State Bank of Grand Forks v. Bellamy, 19 N.D. 509, 125 N.W. 888, 31 L.R.A.,N.S., 149. However, because the term "guaranty" or "guarantee" is not always employed in commerce in an unequivocal sense, the employment of that term is not conclusive of an intent to assume a mere collateral obligation, and it is permissible to read a writing in the light of all of the

4

surrounding circumstances to determine whether an original and independent obligation, rather than a mere guaranty was intended. 24 Am.Jur., Guaranty, § 5. Bailey Loan Co. v. Seward, 9 S.D. 326 at 331, 69 N.W. 58. Absent controlling facts the natural meaning must obtain. Williston on Contracts, 3rd Ed., § 465.

In emphasizing what it deemed to be the controlling facts the promisee bank states, "It (Reinhard) received all the proceeds thereof; and the facts show that the loan evidenced by such note was made at the sole request of and for the exclusive benefit of the defendant Reinhard Brothers. It represented an original transaction".

Such an issue was resolved in Burt v. Gage, 50 S.D. 208, 208 N.W. 985. The promissor in that case had entered into a contract to purchase real estate. Before he had performed his contract, he found a purchaser for the property and induced his vendor to deed directly to the substitute purchaser and to accept that purchaser's notes secured by mortgage as part of the settlement. The vendor, in assenting to the promissor's request, required him to endorse a guaranty on the notes of the substitute purchaser in words in substance identical with those under consideration here. In stating its conclusion this court wrote in part as follows, "All of the arguments of appellants' counsel upon this point are based upon the theory that the indorsements made appellants mere guarantors of the notes. But we consider this theory untenable, in view of the fact that appellants were financially interested in the transaction, and, if their original contract with respondents were carried out, would be the makers of the notes given in payment." Continuing, this court wrote "The indorsements in the instant case were original agreements of appellants, and they were not released therefrom by any of the acts which they rely upon as releasing them as mere guarantors."

In reaching the quoted conclusion in that case this court invoked what is commonly referred to as the "Leading Object Rule" a rule which has come down to us with the Statute of Frauds as a generally accepted evidential guide in determining whether one who has made a parol promise to answer for the debt of another may claim the benefit of that statute.

To serve our present purposes we employ the rule as it is phrased in a quotation appearing in Vol. 2, Corbin on Contracts, § 366:

> "When the leading object of the promise or agreement is to become guarantor or surety to the promisee for a debt for which a third party is and continues to be primarily liable, the agreement, whether made before or after or at the time with the promise of the principal, is within the statute, and not binding unless evidenced by writing. On the other hand, when the leading object of the promisor is to subserve some interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute."

Commenting on the rule, Corbin, in the section cited supra states:

> "There is a difference between cases where the promisor makes his promise for the benefit and accommodation of another and cases where he makes it for his own benefit and concern. In the former cases he is a surety, having to some degree a fiduciary relation with the third person; in the latter cases he is a stranger to the third person and does not belong to the class deserving the protection of the statute. In the former cases he has the equitable rights of exoneration and indemnity; in the latter cases he has not, his right against the third person being that of an assignee only."

Facts deemed controlling in sustaining a finding that a parol promise was intended as original and independent and hence not within the statute of frauds, in our opinion, may, if surrounding an equivocal written promise, sustain a like finding. Whether the parties have intended an undertaking collateral or independent and original in nature is generally a task fraught with difficulties. Subsequent events have offered support for the conclusion of the late Justice Finch, reached at an early date in tracing the course of the New York decisions. In writing for the Court of Appeals in 1888, in Rintoul v. White, 108 N.Y. 222, 15 N.E. 318, at 319, he observed,

"When, by some authorities, it was said that a verbal promise to pay the debt of another was always collateral and invalid if the primary debt continued to exist concurrently with the promise, a simple and easy test was furnished to determine whether the statute did or did not apply. But when that test was discarded, and it became the law that a promise to pay another's debt might be original, although that debt subsisted, and was in no manner extinguished, the presence of such continued liability raised a cloud of doubt and ambiguity which, perhaps, will never be entirely dissipated."

As we turn to the facts, we deem it important to bear in mind that which was written in a leading case by Mr. Justice Brewer, "There is force in this contention, as it implies that some one else was also bound, but the real character of a promise does not depend altogether upon the form of expression, but largely on the situation of the parties; **and the question always is, what the parties mutually understood by the language,—whether they understood it to be a collateral or a direct promise."** (Emphasis supplied) Davis v. Patrick, 141 U.S. 479, 12 S.Ct. 58, 35 L.Ed. 826. Each case must. be resolved on its peculiar facts. In our opinion, the real intention of the parties will not be permitted to obtain, if a court, blinding itself to the circumstances as a whole, predicated on the leading object rule, automatically concludes an original promise to have been intended. We hold that the quoted rule should operate as no more than an aid in determining the intention of the parties, and not as a means of imparting a direct promise contrary to a clearly manifested intention of the parties.

█ In considering the facts we assume the leading object of Reinhard to have been to collect the amount of Comer's indebtedness, and, based on inference rather than express testimony, that the proceeds of Comer's loan was directly or indirectly received by Reinhard.

The narrow issue is whether those assumed facts are controlling in view of other evidenced circumstances. Throughout the negotiations leading up to the transaction the subject dis-

cussed was a loan to Comer. A representative of Reinhard orig-
inally inquired of the President of the Bank if it would make a
loan in a stated amount to Comer to enable him to discharge
his indebtedness to Reinhard. The then answer was in the nega-
tive. In a later interview the inquiry was if such a loan to Comer
would be made if Reinhard would guarantee payment. The
answer of the President was in the affirmative, and such a loan
was authorized. The record is silent as to what was said and
done as the transaction was closed, except it appears that, in
preparing both the contract of Comer and of Reinhard, the of-
ficer of the Bank used printed forms of the Bank.

The promissory note of Comer promised payment of $2,645.70
in monthly installments of $175 and contained these words, "In
case of default in payment of any installment or of interest when
due, the whole of this note, both principal and interest, shall
be immediately due and payable. The makers, endorsers, sure-
ties and guarantors hereof hereby severally waive persentment
for payments, notice of nonpayment, protest and notice of pro-
test. The endorsers, sureties and guarantors hereof hereby sev-
erally consent that the time of payment may be extended or
this note renewed without notice to them and without affecting
their liability hereon." The undertaking of Reinhard appears
on the reverse side of Comer's note and reads as follows: "For
value received, I hereby guarantee the payment of the within
note at maturity or at any time thereafter, and hereby agree
and consent to all the stipulations contained therein."

We observe in passing that the transaction was not without
substantial benefit to Comer. It transformed a past due indebted-
ness to Reinhard into a monthly installment indebtedness to the
Bank.

The negotiations were for a loan to Comer, guaranteed by
Reinhard. The Bank, which must be presumed to understand
the difference between a direct obligation and that of a guaran-
tor, and to have carefully prepared its printed forms in the light
of that understanding, prepared a contract of guaranty for the
signature of Reinhard. It is our conclusion that these facts so
clearly manifest a mutual intention of the parties to obligate

Reinhard as a mere guarantor, as to render it unjust to permit the leading object rule to impart a different character to that undertaking. Our holding is that the trial court did not err in treating Reinhard as a mere guarantor and its obligation as collateral in character.

The only additional points briefed and argued by the appellant are without any substantial factual support in the record and hence do not merit consideration.

The judgment of the trial court is affirmed.

ROBERTS, BIEGELMEIER and HOMEYER, JJ., concur.

HANSON, J., concurs in result.

SMITH, C., sitting for RENTTO, P.J., disqualified.