RICHTER et ux, Respondents v. INDUSTRIAL FINANCE COMPANY, INC., Defendant, and PFEIFER, Appellant

(221 N.W.2d 31)

(File No. 11292. Opinion filed August 31, 1974)

---

* Retired Supreme Court Judge acting under authorization pursuant to S.L. 1974, Ch. 154, § 4.

Richard W. Sabers of Dana, Golden, Moore & Rasmussen, Sioux Falls, for plaintiffs and respondents.

Gale E. Fisher of May, Johnson & Burke, Sioux Falls, for defendants and appellants.

WUEST, Circuit Judge.

This is an action on seven separate promissory notes. They were originally executed by Industrial Finance Company, Inc., and delivered to plaintiff on or about the dates they bear. Except for two of the notes, they were marked "Subordinated."

Industrial Finance Company had borrowed large sums of money from several banks. The banks had directed Industrial Finance to obtain subordination agreements from individual creditors. When the plaintiff, Francis Richter, obtained the notes, he signed subordination agreements which provided the notes were subordinate to the obligations of Industrial Finance to the banks. The consideration from the banks to Richter—stated in the agreements—was to continue presently existing indebtedness, or continue to extend financial accommodations. Otherwise, the notes were in the usual form and provided for payment as specified dates which were all past due with one exception.

Industrial Finance had been established by defendant, Carl W. Pfeifer, and operated by him until 1959, at which time active management was assumed by his son, Loren Pfeifer; however, defendant continued as president. His investment in the corporation consisted of $200,000 in capital stock, together with promissory notes of the corporation in the sum of $255,000. These promissory notes were subject to the same kind of subordination agreement signed by the plaintiff.

On June 13, 1969, Loren Pfeifer committed suicide, and his father assumed operation of the business. Shortly thereafter, he was advised there was a shortage but he didn't know the amount until a new audit was completed in August. Based upon a September 1968 audit reflecting a net worth of $294,694.78 he mailed a letter to all note holders informing them of his son's death, that he had taken charge of the business, and that there were ample resources to take care of all obligations and leave a sizeable balance.

On or about July 15, 1969, Mr. Richter came to Sioux Falls and conferred with Mr. Pfeifer at the Industrial Finance offices. He was assured by Mr. Pfeifer that there were ample resources for everyone to get their principal, their interest, and he (Pfeifer) would get most of his money, if not all of it. Later that day plaintiff went to Salem, South Dakota, and talked to a friend who was employed at the bank there. After this conversation he became greatly concerned because he had gotten conflicting reports as to the status of Industrial Finance Company. He expressed concern over the financial status of Industrial Finance

to his wife, Joyce. On August 22, 1969, plaintiffs went to Sioux Falls for the express purpose of resolving some of their concern over the conflicting reports Mr. Richter had received in July on the status of Industrial Finance. On this date, Mr. Pfeifer told him an audit was underway (it is dated August 14), a creditors' committee was being formed, and there were ample resources for everyone to receive all their principal and interest. He also mentioned the importance of not going into receivership or bankruptcy. Plaintiff replied he was not primarily interested in bankruptcy if everything was as defendant had just told him, but he was concerned about the company and defendant should have no objection to putting his personal signature on the notes.

Sometime in July or August a committee of bankers and Industrial Finance began drafting a Creditors Agreement which was executed by them in September of 1969. This was also discussed on August 22, 1969, but it had not been prepared. Mr. Richter indicated a copy should be forwarded to him and he would sign it if it was acceptable. On September 15, 1969, Mr. Richter received a copy of the Creditors Agreement which he refused to sign because he believed it placed the banks in a better position than that to which they were entitled under the subordination agreements. He also received a copy of the audit enclosed with a letter dated September 2, 1969. This was the audit that thirteen banks had hired an accounting firm to conduct.

When Mr. Pfeifer signed the promissory notes he knew the corporation was in serious trouble. He had executed an agreement subordinating his $200,000 in corporate stock and the $255,000 in promissory notes to all other debts of the corporation; he also knew that if the creditors threw Industrial Finance Company into receivership, bankruptcy, or some other kind of forced liquidation he might lose $455,000. The audit dated August 14, 1969, showed the company had suffered severe losses and its future as a going concern was dependent upon the creditors' actions.

This action was commenced on April 5, 1972, against Industrial Finance Company and Carl W. Pfeifer, individually. The trial court entered judgment against both defendants in the

sum of $1,000 plus interest, and the sum of $25,550 plus interest against the defendant, Carl W. Pfeifer. The trial court did not enter judgment in the full amount of the notes against Industrial Finance because of a provision in the subordination agreements which provided Richter would bring no action or proceeding to collect or enforce the payment of said subordinated indebtedness, or any part thereof. The propriety of the ruling has not been appealed or questioned in this court. Therefore, we do not review it because only defendant Pfeifer appealed.

The defendant urges two grounds upon which he claims the judgment should be reversed: (1) That there was no legal consideration obligating him when he signed the notes, and (2) that if there was legal consideration he is bound only to the extent of Industrial Finance.

Mr. Pfeifer signed the promissory notes after they were originally executed and delivered. As such, he is a guarantor on the notes. "A guaranty is a promise to answer for the debt, default, or miscarriage of another person." SDCL 56-1-1. "It is a contract on the part of one person which is collateral to a primary or principal obligation on the part of another." Miners & Merchants Bank v. Comer, 82 S.D. 1, 140 N.W.2d 390.

Where a contract of guaranty is entered into at some time other than the original obligation, then there must be a consideration distinct from that of the original obligation. SDCL 56-1-3. "Any benefit conferred or agreed to be conferred upon the promiser by any other person to which the promiser is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer as an inducement to the promiser, is a good consideration for a promise." SDCL 53-6-1.

Defendant claims there was no mutual consent for establishing consideration in this case. It is a recognized principle of law that nothing is consideration for a contract that is not accepted or regarded as such by both parties. The rule is stated in 17 Am.Jur.2d, Contracts, § 92, as follows:

"The mere presence of some incident to a contract which might under certain circumstances be upheld as

a consideration for a promise does not necessarily make it the consideration for the promise in that contract; to give it that effect, it must have been offered by one party and accepted by the other as an element of the contract. Accordingly, the fortuitous presence in a transaction of some possibility of detriment, latent but unthought of, is not enough to furnish a consideration for a contract. The promisor and promisee must have dealt with it as the inducement to the promise. In other words, on the one hand, the consideration must be the inducement to the making of the promise, and on the other, it must be induced by the promisor's express or implied request. The classic doctrine is that 'the promise and the consideration must purport to be the motive each for the other, in whole or at least in part; it is not enough that the promise induces the detriment or that the detriment induces the promise if the other half is wanting.' "

The foregoing is consistent with South Dakota statutes on the subject. One of the essential elements to the existence of a contract other than sufficient consideration is consent. SDCL 53-1-2(2). This consent must be free, mutual and communicated. SDCL 53-3-1. "Consent is not mutual unless the parties all agree upon the same thing in the same sense." SDCL 53-3-3. It is not enough for one of the parties to figure out, in retrospect, some circumstance which he might subsequently claim to be a detriment.

The trial court found the defendant thoroughly understood the significance of signing the promissory notes in return for legal forbearance, and Mr. Richter agreed to forbear from throwing Industrial Finance Company into bankruptcy.

■ We have very carefully studied the record and we believe the trial court could readily infer from the circumstances, conduct of the parties, and the conversations that such an understanding or agreement was reached when Pfeifer signed the notes. We are not at liberty to overrule a factual finding by the trial court unless it is clearly erroneous. In re Estate of Hobelsberger, 85 S.D. 282, 181 N.W.2d 455. We do not find its ruling on this issue clearly erroneous.

Defendant further claims there was no legal forbearance, claiming there must be relinquishment of a "legal right." The rule is stated at 38 Am.Jur.2d, Guaranty, § 46, as follows:

"If the creditor forbears from exercising an obviously unfounded claim, the creditor has not relinquished any 'legal right' which he had and there is no consideration for a promise given in exchange for the forbearance. Thus, the promise of the guarantor has generally been held not to be supported by consideration where the creditor did not have any enforceable demand or cause of action against the purported debtor."

Defendant claims that Richter had no "legal right" to commence bankruptcy proceedings because the subordination agreements provided he would not bring any action or proceeding to collect or enforce the payment of the notes, and in the event of the insolvency, bankruptcy or other liquidation of Industrial Finance, or in the event of proceedings to reorganize Industrial Finance under any appropriate bankruptcy or reorganization statute, he would file a claim against Industrial Finance and order and direct by appropriate instruments in writing that all payments made on his claim be paid over to the banks.

In order to accept defendant's theory, we must presume —without deciding—that the subordination agreements were valid as between the banks and Richter. Regardless of the legality or illegality, the agreements were for the benefit of the banks and not to relieve or discharge Industrial Finance from its obligation on the notes. In other words, the agreements, if valid, could be asserted by the banks but not by Industrial Finance or defendant Pfeifer. They cannot assert as a defense a contractual obligation made for the benefit of someone else.

When Richter agreed to forbear from bringing bankruptcy proceedings, as was found by the trial court, he was not forbearing the exercise of "an obviously unfounded claim." He may or may not have been successful; we cannot forecast the result of unlitigated claims.

■ We hold it was a benefit to Mr. Pfeifer under the circumstances for Richter to forbear commencement of bankruptcy procedures and permit Pfeifer to work with the creditors to save the company from possible bankruptcy which would jeopardize his investment. Thus, there was consideration for Pfeifer's guaranty.

■ Having found there was consideration for the guaranty, we next consider whether defendant's liability exceeds that of Industrial Finance. SDCL 56-1-18 provides:

> "The obligation of a guarantor must be neither larger in amount nor in other respects more burdensome than that of the principal, and if in its terms it exceeds it, it is reducible in proportion to the principal obligation."

This statute is merely a codification of the common law in this respect. Generally, the liability of a guarantor cannot exceed the liability of the principal debtor, and all guaranty contracts are conditioned upon the underlying obligation between the creditor and the principal debtor. 38 Am.Jur.2d, Guaranty, §§ 74 and 77. In order for a plaintiff to enforce an underlying obligation against a guarantor, the plaintiff must show that the guaranty debt or obligation is due him, and, if for any reason the principal debtor is not bound to make payment to the creditor or plaintiff, the plaintiff may not hold the guarantor liable. 38 Am.Jur.2d, Guaranty, § 77; Merchants National Bank v. Citizens' State Bank, 93 Iowa 650, 61 N.W. 1065. The rule is that a guarantor is liable only in the event and to the extent that his principal is liable.

The reason for the rule is obvious. As stated in Miners & Merchants Bank v. Comer, 82 S.D. 1, 140 N.W.2d 390:

> "A guaranty is a promise to answer for the debt, default, or miscarriage of another person. SDC 26.0101. It is a contract on the part of one person which is collateral to a primary or principal obligation on the part of another. One who signs a contract of guaranty of payment upon a negotiable instrument assumes a separate,

collateral and *secondary obligation.* He is not an original contractor." (emphasis supplied)

"Therefore, unless the (principal) debtor is bound under the principal contract, there is no obligation which is guaranteed and the guarantor is not liable to the creditor if the (principal) debtor fails to perform." 38 Am.Jur.2d, Guaranty, § 51. In Federal Deposit Insurance Corp. v. Stensland, 70 S.D. 103, 15 N.W.2d 8, the court held that a "guaranty partakes the character of the principal contract."

■ Industrial Finance Company was obligated to plaintiffs on its promissory notes. Because Richter signed subordination agreements for the benefit of the banks it did not relieve Industrial Finance from its obligation or liability to the plaintiffs. Possibly, Richter breached his agreement with the banks by bringing an action. But whether he did or did not, Industrial Finance was not relieved of its obligation. Therefore, the obligation of the guarantor (Mr. Pfeifer) was neither larger in amount nor in other respects more burdensome than that of the principal, nor did it exceed the obligation of the principal. Since no appeal was taken from the court's judgment regarding Industrial Finance, we have not reviewed that portion of the judgment.

The judgment of the circuit court will be affirmed.

WINANS and DOYLE, JJ., concur.

BIEGELMEIER, C. J., and WOLLMAN, J., dissent.

WUEST, Circuit Judge, sitting for DUNN, J., disqualified.

BIEGELMEIER, Chief Justice (dissenting).

This appeal concerns the validity and effect of subordination agreements which contain, among other clauses, the following:
"SUBORDINATION AGREEMENT
WHEREAS INDUSTRIAL FINANCE COMPANY (hereinafter called the 'Borrower') is now or hereafter may be indebted to ANY AND ALL BANK OR BANK ASSOCIATIONS (hereinafter called the 'Bank') on account of loans or other extensions of credit or financial accommodations from the Bank to the Borrower (such indebtedness being hereinafter called the 'Bank Indebtedness'); and

WHEREAS Borrower is also indebted to the undersigned in the sum appearing below opposite the signature of the undersigned (hereinafter called the 'Subordinated Indebtedness'), and

WHEREAS the Bank is unwilling to continue the presently existing Bank Indebtedness or to make future loans or to continue to extend financial accommodations to the Borrower except and unless the Subordinated Indebtedness is made subordinate to the Bank Indebtedness as hereinafter set forth; and

WHEREAS the undersigned is of the opinion that it would be for his (her or its) best interests to assist the Borrower in obtaining credit accommodations from the Bank, and therefore is willing to make and enter into this Subordination Agreement.

NOW, THEREFORE, in consideration of the premises and other valuable consideration, the receipt and sufficiency whereof is hereby acknowledged, the undersigned does hereby agree with the Bank as follows:

1. Undersigned hereby agrees that the Subordinated Indebtedness shall be and it is hereby made fully subordinate to the Bank Indebtedness for all purposes.

2. Until this agreement be terminated, as hereinafter provided, undersigned will not ask for or demand, receive or accept payment of the Subordinated Indebtedness, or any part thereof, except the current interest thereon, and the undersigned will bring no action or proceeding to collect or enforce the payment of said Subordinated Indebtedness, or any part thereof, and if payments are made contrary to the terms of this agreement to apply upon the principal of said Subordinated Indebtedness, the undersigned will forthwith pay over the same to the Bank.

3. In the event of the insolvency, bankruptcy or other liquidation of the Borrower, or in the event of proceedings to reorganize the Borrower under any appropriate bankruptcy or reorganization statute, the undersigned will file a claim against the Borrower on account of the Subordinated Indebtedness, and will order and direct by appropriate instruments in writing that all dividends or payments made on said claim shall be paid over to the Bank, and will further order and direct that in case of reorganization of the Borrower, any new obligations or securities which the undersigned would be entitled to receive shall be delivered to the Bank, or, the Bank may itself file a claim for or on account of the Subordinated Indebtedness, and for such purpose the undersigned hereby nominates, constitutes and appoints the Bank its true and lawful attorney either in the name of the undersigned or in the Bank's own name to file such claim and to take any and all other actions or proceedings in respect thereto which it deems necessary or desirable. The undersigned agrees that the power of attorney herein given to said bank is coupled with an interest and is not subject to revocation by the undersigned and that it shall not become terminated by reason of the death or disability of the undersigned. The undersigned agrees, upon request of the Bank, to give the Bank such further instruments of assignment or assurance as are necessary to more fully enable the Bank to file said claim and to carry out the provisions of this paragraph.

4. All moneys or other properties received by the Bank from or on account of the Subordinated Indebtedness pursuant to the provisions of either paragraph 2 or 3 of this agreement, may be held by it either as additional security for payment of the Bank Indebtedness, or, at its election, may be applied in payment thereof.

5. Undersigned hereby further agrees that it will not, without first obtaining the written consent of

the Bank, sell, pledge or otherwise dispose of any of the Subordinated Indebtedness."

The court found that all the notes of plaintiff, except the one note for $1,000 (Ex. 3), "were subordinated by Mr. Richter to indebtedness owed by Industrial Finance Company to several banking corporations;" that the "subordination agreements apply to the principal indebtedness of all of the promissory notes signed by Industrial Finance Company, except Exhibit 3, *but said subordination agreements do not apply to any of the promissory notes as signed by Carl W. Pfeifer individually.*" (emphasis supplied)

The court concluded that plaintiffs' complaint against the Company on all the notes (except Ex. 3) "be dismissed without prejudice." The trial court then entered judgment against defendant Pfeifer for all these notes ($25,550) but dismissed plaintiffs' complaint on those same notes against the defendant Company. Therefore, by these rules the court upheld the validity of the subordination agreements and yet did not give effect to or enforce them against plaintiffs.

It is undisputed that the Company executed these notes on October 21, 1966 through April 15, 1969, and that on August 22, 1969, after the proceedings mentioned in the opinion, Pfeifer affixed his signature on the bottom of the notes. It was alleged in the answer and is undisputed that the obligations to the banks were unpaid.

The law is, and it is correctly stated in the opinion, that a guarantor on a note cannot be held liable unless the principal is liable nor to a greater extent than the principal. For instance, the opinion states, quoting from 38 Am.Jur.2d, Guaranty, § 46:

" 'Thus, the promise of the guarantor has generally been held not to be supported by consideration where the creditor did not have any enforceable demand or cause of action against the purported debtor.' "

Thereafter, some of the clauses barring action by the Richters are set forth in the opinion. The opinion assumes the agreements valid between the banks and Richters. There can be no question of that. The majority opinion states: "Regardless of the legality or illegality, the agreements" did not "discharge Industrial Finance from its obligation on the notes." While this is true, nevertheless, the agreements not only prevented the *Company* from paying the

notes, they also barred this action; the trial court so concluded and so decreed by entering a judgment for the Company.

The majority opinion then continues:

"In other words, the agreements, if valid, could be asserted by the banks but not by Industrial Finance or defendant Pfeifer. They cannot assert as a defense a contractual obligation made for the benefit of someone else."

The words therein "if valid" repeat the illegality theory without applying it. I have come to the conclusion that the agreements were made also for the benefit of the *Company* because they required that the Company deal with, and pay the obligations to, the banks, during which time the Company would not be harassed by other creditors. The agreements prohibited any action by Richters against the banks, the Company and Pfeifer. If the *Company* could not be sued in this action while the banks' debts remained unpaid, neither could Pfeifer be sued. The agreements completely barred Richters from taking any action, including any steps to "throw the corporation into bankruptcy;" Richter cannot even "ask for or demand, receive or accept payment" of the notes. If any part of the principal is collected, Richter must "forthwith pay over the same to the Bank."

Under the facts here, SDCL 56-1-18, quoted in the majority opinion, prevents plaintiffs' action until the debts of the Company to the banks are paid, as does the following statement in that opinion:

"Generally, the liability of a guarantor cannot exceed the liability of the principal debtor, and all guaranty contracts are conditioned upon the underlying obligation between the creditor and the principal debtor. * * * The rule is that a guarantor is liable only in the event and to the extent that his principal is liable."

Under the principles of law set forth in the majority opinion the action against Pfeifer was prematurely commenced and the judgment against him should be reversed.

I am authorized to state that Justice WOLLMAN joins in this dissent.