37582. DEEP SOUTH SERVICES, INC. et al. v. WADE.

HILL, Presiding Justice.
We granted a writ of certiorari in this case to review the opinion of the Court of Appeals in *Deep South Services v. Wade,* 158 Ga. App. 156 (279 SE2d 340) (1981). Prior to June, 1977, Deep South, a contractor, regularly purchased electrical materials and supplies on open account from B&W Electric Supply Co. At that time, J. D. Wade owned B&W and was chairman of its board of directors. On May 20, 1977, Deep South executed an installment note promising to pay B&W $107,947.32 (the amount due on the open account) in sixty equal installments at 8% interest. Clark and Kay Scoggins and Moreland Smith jointly executed a guaranty of payment of the note.[1]

---

[1] Moreland Smith was the president of Deep South; Clark Scoggins was its

Wade sold his interest in B&W, which continued operations under the name B&W Summers Electric Company. B&W Summers then assigned the Deep South note to J. D. Wade as nominee under a nominee agreement.

In July, 1979, J. D. Wade filed a complaint against Deep South, Moreland Smith, and Clark and Kay Scoggins alleging that Deep South owed plaintiff $98,984.31 principal plus interest and attorney fees on the note. Defendants answered and, inter alia, raised the defense of failure of consideration. Deep South admitted that the note "arose out of an open account debt of [Deep South] to B&W" but both Deep South and the guarantors contended that they would not have signed the note absent J. D. Wade's alleged promise to insure that after he sold B&W, B&W Summers would continue to extend credit to Deep South on a current basis.[2]

After Wade moved for summary judgment, defendants filed an affidavit by Clark Scoggins setting out this defense in some detail. Scoggins stated: "In April of 1977, Mr. Wade . . . updated me on his negotiations to sell B&W to Summers. . . . Mr. Wade asked that Deep South sign a note for its open account debt personally guaranteed by my wife, Moreland Smith, Jr., and me. Mr. Wade stated that he knew it would be impossible for Deep South to pay this note unless it had an uninterrupted flow of materials to jobs in progress. He therefore agreed that if the note and guarantees were signed, B&W would continue· to extend credit to Deep South on current terms, and furthermore, that he had made a provision in the sale agreement to Summers [to this effect]. . . . We would not have signed guarantees without the agreement for B&W and Summers to continue to sell to Deep South on open account; i.e., normal credit terms."[3]

Scoggins' affidavit went on to state that B&W Summers first sold to Deep South in June of 1977, but that on August 10, 1977, all deliveries ceased. When he called J. D. Wade he was referred to Mr. Mike Wallace of B&W Summers who informed him that "It was true that B&W Summers had agreed to sell to Deep South on open account as long as Deep South remained current with its payments,

---

secretary-treasurer.

[2] The defendants contend that an account is "current" when payment is due by the 30th of the month following the sale, and that in contrast, where credit is extended on a discount basis, payment is due by the 10th of the month following the sale.

[3] We deal here with a note and guaranty, both of which begin with the traditional phrase "For value received" without specifying the consideration. Hence, parol evidence is admissible. *Pitts v. Allen,* 72 Ga. 69 (2) (1883); *Waller v. Martin-Senour Co.,* 45 Ga. App. 808 (2) (166 SE 53) (1932).

and that it was true that in July 'current' meant payment by the 30th day of the month. However, as of August 10, 1977, B&W Summers was changing the definition of 'current' to mean payment by the 10th." According to Scoggins, due to this new credit arrangement Deep South became delinquent on the 10th, paid its account by the 30th, but was unable to buy supplies between the 10th and 30th of each month and was out of business by the end of the year.

Maintaining that these allegations were immaterial and therefore declining to counter them, J. D. Wade argued for summary judgment in his favor. The trial court granted his motion, the Court of Appeals affirmed and we granted certiorari.

1. The grant of J. D. Wade's motion for summary judgment was affirmed on the premise that UCC § 3-408 (Code Ann. § 109A-3—408) applies to both the original obligor (Deep South) and to guarantors (the Scoggins and Moreland Smith). With this we agree. UCC § 3-408 provides: "Want or failure of consideration is a defense as against any person not having the rights of a holder in due course . . ., except that no consideration is necessary for an instrument or obligation thereon given in payment of *or as security* for an antecedent obligation of any kind. . . . *Partial failure of consideration is a defense* pro tanto whether or not the failure is in an ascertained or liquidated amount." (Emphasis supplied.) Courts uniformly have construed this provision to apply with equal force to the original obligor and to guarantors. E.g., Lumberman Assoc. v. Palmer, 344 FSupp. 1129 (E.D. Pa. 1972), affd. mem., 485 F2d 680 (3d Cir. 1973); State Bank v. Owens, 502 P2d 965 (Colo. App. 1972); First Nat. Bank v. Achilli, 301 NE2d 739 (Ill. App. 1973); Wilson v. Planters Bank, 383 S2d 1089 (Miss. 1980); Musulin v. Woodtek, Inc., 491 P2d 1173 (Ore. 1971); A. M. Castle & Co. v. Bagley, 467 P2d 408 (Utah 1970). The single exception to this otherwise unanimous rule of which we are aware is the decision in Capital City Bank v. Baker, 442 SW2d 259 (Tenn. App. 1969). Although we find UCC § 3-408 clear on its face and thus agree with the majority rule, any doubt would be resolved by Official Comment 2, which states: "The 'except' clause is intended to remove the difficulties which have arisen where a note or a draft, or an indorsement of either, is given as payment or as security for a debt already owed by the party giving it, *or by a third person.*" (Emphasis supplied.)

Thus we hold, as did the Court of Appeals, that the provision in UCC § 3-408 that consideration is not necessary for an instrument given in payment or as security for an antecedent obligation applies with equal force to obligations given by the original obligor and to third party guarantors. See also *General Tire &c. Co. v. Solomon*, 124 Ga. App. 308 (183 SE2d 573) (1971); *Hurt v. Citizens Trust Co.*, 128

Ga. App. 224 (4) (196 SE2d 349) (1973); *Berry v. Atlas Metals, Inc.,* 152 Ga. App. 437, 439 (263 SE2d 179) (1979). Apparently UCC § 3-408 was not relied upon in *Friedland v. C&S South DeKalb Bank,* 135 Ga. App. 591 (218 SE2d 302) (1975); thus Division 3 of that opinion is in conflict with the statute and will not be followed.

2. The second premise underlying the affirmance of the grant of summary judgment to J. D. Wade is that since under UCC § 3-408 lack of consideration is not a defense, failure of consideration is not either. With this we cannot agree. Lack of consideration and failure of consideration are distinct defenses. 1 Corbin on Contracts, § 133 (1963). Under UCC § 3-408 the absence of consideration is not a defense, just as at common law the absence of consideration was not a defense in an action on a contract under seal. 6 Corbin on Contracts, § 1263 (1962). In neither instance does this render *failure* of consideration unavailable as a defense. Id. The "except" clause in UCC § 3-408 relates to lack of consideration, not to failure of consideration. We note further that UCC § 3-408 expressly provides that "[P]artial failure of consideration is a defense pro tanto. . . ." Although no consideration is necessary for an instrument or obligation thereon given in payment or as security for an antecedent obligation (Division 1, above), where additional consideration is nonetheless in fact given and received there can be a failure of such consideration which is a defense pro tanto. UCC § 3-408.

Thus we hold that the trial court erred in granting summary judgment on the note.[4] The ruling in Division 1 of *Doyal v. Ben O'Callaghan Co.,* 132 Ga. App. 336 (1) (208 SE2d 136) (1974), that a claim of breach of a warranty provision in a settlement contract would not defeat a motion for summary judgment on the note given in settlement will not be followed; the claim of breach of the warranty provision constituted a viable defense of partial failure of consideration that was not barred by UCC § 3-408.[5]

3. Applicants Moreland Smith and Clark and Kay Scoggins (the

---

[4] We do not rule that the alleged agreement negotiated by Wade between B&W and the defendants was sufficiently definite as to time or otherwise to be enforceable. See *Pepsi-Cola Co. v. Wright,* 187 Ga. 723, 727 (2 SE2d 73) (1939). See also Division 3, infra. We do not have before us information as to the jobs in progress referred to in the Scoggins affidavit or the terms of the sales agreement between Wade and Summers. We merely find that on this record there were genuine issues of material fact and that the plaintiff was not entitled to summary judgment.

[5] We note that in both *General Tire &c. Co. v. Solomon,* and *Berry v. Atlas Metals, Inc.,* supra, the lawyers pleaded failure of consideration and that term was used by the court, when the issue was lack of consideration. As we have held, the two terms are not synonymous and should not be used interchangeably.

guarantors) also complain that the Court of Appeals erred in holding that as matter of law they were not discharged by the alleged breach of the agreement. They assert that because the alleged breach increased their risk beyond what they assumed in guaranteeing the note, they are entitled to be discharged as a matter of law. We decline to rule on this assertion, however, in view of the fact that the record before us does not disclose a motion for summary judgment by the guarantors. Although Clark Scoggins' unrefuted affidavit does indicate that a breach of the agreement led to an increase in the guarantors' risk, Code Ann. § 103-203,[6] 13 EGL, Guaranty & Suretyship, § 44 (1979), Wade did not contest the facts recited because the issue of increase of risk was not raised by motion for summary judgment by the guarantors. Thus it would be patently unfair and not in accord with the search for truth for this court to rule on the defense of increase of risk as if a motion for summary judgment on this ground had been made when in fact the parties had not focused on this issue in the trial court. Therefore although we cannot agree with the Court of Appeals' conclusion that there was no increase of risk as a matter of law, we decline to rule on the guarantor's contention that there was an increase of risk as a matter of law.

*Judgment reversed. Jordan, C. J., Marshall, Clarke, Smith and Gregory, JJ., concur.*

DECIDED SEPTEMBER 8, 1981.

*Stanley C. Coker,* for appellants.
*H. William Cohen, Thomas D. Richardson,* for appellee.

---

[6] Under both prior law, *Houston General Ins. Co. v. Brock Const. Co.* 241 Ga. 460 (3) (246 SE2d 316) (1978), and current law, Code Ann. § 103-101, Ga. Laws 1981, p. 870, the defendants are entitled to the defense of discharge by increase of risk enunciated by Code Ann. § 103-203 whether they are compensated or uncompensated sureties or guarantors.