**INTERNATIONAL MULTIFOODS CORPORATION, Plaintiff and Appellee,**

v.

**Carlyle F. MARDIAN, Raymond S. Gruby, Joyce Gruby, Robert J. Wagner, and Paulette M. Wagner, Defendants and Appellants.**

Nos. 14868, 14878.

Supreme Court of South Dakota.

Considered on Briefs Oct. 22, 1985.

Decided Dec. 31, 1985.

Charles B. Kornmann of Richardson, Groseclose, Kornmann, Wyly, Wise & Klinkel, Aberdeen, for plaintiff and appellee.

Harvey C. Jewett and Joseph P. Barnett of Siegel, Barnett & Schutz, Aberdeen, for defendants and appellants.

HENDERSON, Justice.

## ACTION/PARTIES

This is an appeal arising from a summary judgment granted to a plaintiff in, essentially, a collection lawsuit on promissory notes for hog feed sold and delivered—and thereafter consumed by defendants' hogs. The law of guaranty is most pertinent to this appeal. We affirm.

Plaintiff-appellee is International Multifoods Corporation (Multifoods). Multifoods is a Delaware corporation and is involved in the business of producing and manufacturing animal feeds. Defendants-appellants are Carlyle F. Mardian, Raymond S. Gruby, Joyce Gruby, Robert J. Wagner, and Paulette M. Wagner (defendants). Defendants are the officers and sole stockholders of W.M.G. Pork Farms, Inc. (W.M.G.). W.M.G. is a South Dakota corporation engaged in the business of swine production near Roslyn, Day County, South Dakota. Robert J. Wagner (Wagner) is the president of W.M.G. and manages its operations on a daily basis.

## FACTS

In July 1981, Multifoods, through its sales agent and local dealer at the Roslyn Elevator, convinced Wagner to switch from the swine feed concentrate W.M.G. was then using, to Multifoods' swine feed concentrate. The Multifoods swine feeder concentrate was represented by Multifoods to be a complete swine supplement which required no additives. On July 20, 1981, W.M.G. executed a Finance Credit Application and Agreement with the Roslyn Elevator which gave W.M.G. a maximum credit line of $9,000. On September 15, 1981, the Board of Directors of W.M.G., by resolution, authorized itself to borrow from Multifoods and give the latter such mortgages, security agreements, or other documents as were required. Also, on September 15, 1981, the defendants individually executed documents entitled "Guaranty." These documents provided, inter alia:

> In consideration of credit to be extended by [Multifoods] ... to WMG Pork Farms Inc. ("Debtor") *the undersigned jointly and severally guarantee* to [Multifoods] the *prompt payment* at maturity, *without deduction for any claim of setoff or counterclaim of Debtor* or loss of contribution from any other guarantors, the full amount of all indebtedness, direct or indirect, absolute or contingent, secured or unsecured, which may now or hereafter exist or be owing from Debtor to [Multifoods], including interest thereon and any expenses of collection thereof, including court costs and attorneys' fees.

This is an absolute, unlimited guaranty and liability hereunder shall in no way be affected or diminished by extensions, renewals, modifications, compromises or releases made by [Multifoods] of the indebtedness in whole or in part and [Multifoods] shall not be obliged to give notice thereof to any of the undersigned nor to proceed first against Debtor or against any other guarantors or against collateral given as security for payment of the indebtedness. (Emphasis supplied.)

In the Fall of 1982, Wagner noticed that W.M.G.'s herd of breeding sows was experiencing breeding problems. Sows were not becoming pregnant. Litters were unhealthy and smaller in size and many pigs died at birth or shortly thereafter. These problems increased at W.M.G. until the Spring of 1983. Between February 2, 1983, and April 20, 1983, W.M.G. received $8,868.40 of swine feeder concentrate on credit from Multifoods under the terms of the Finance Credit Application and Agreement. These deliveries are evidenced by invoices and secured by promissory notes executed by W.M.G. Said sum of $8,868.40 has not been paid and is the subject of the present action.

In the Summer of 1983, after expert consultation, Wagner began adding Vitamin A to Multifoods' swine concentrate and the breeding problems thereafter ceased. In October 1983, Lyle Petersen (Petersen), a feed and nutrition specialist employed by A & L Mid West Agricultural Laboratories, Inc., of Omaha, Nebraska, tested samples of Multifoods' swine concentrate supplied by Wagner. Petersen's conclusion, reached from the testing, was that the feed samples "were deficient in Vitamin A, and so excessively deficient in Vitamin A that the feed is defective and clearly below the standard Vitamin A levels required in the swine feed industry."

On November 8, 1983, Multifoods filed suit against the defendants individually, under the terms of the Guaranty documents executed on September 15, 1981, for the $8,868.40 of swine concentrate delivered to W.M.G. Defendants answered and counterclaimed for $88,000.00. Defendants' counterclaim asserted, inter alia, that W.M.G.'s claims against Multifoods had been assigned to them; that Multifoods negligently produced a swine product deficient in Vitamin A; that Multifoods breached its implied warranty that its product was a complete product which contained all the nutrients and foodstuffs for healthy and fertile swine; that Multifoods breached its express warranty that its product was a complete supplement which required no additives; that Multifoods was strictly liable for producing an unfit and defective product containing insufficient Vitamin A and inadequate warnings and instructions; and that because of the defective feed and breached warranties, there has been a breach of contract and failure of consideration which bans Multifoods from recovering for the swine concentrate delivered to W.M.G. and guaranteed by defendants.

Multifoods moved for partial summary judgment as to the matters alleged in its complaint. The trial court granted Multifoods partial summary judgment, denied Multifoods' request for attorney fees, and ordered that defendants be allowed to proceed upon their counterclaim. Multifoods thereafter moved to be relieved from that portion permitting defendants to proceed upon their counterclaim. An action had been instituted in Day County, South Dakota, by the Roslyn Elevator against W.M.G. in which the latter was asserting its claims against Multifoods as third-party defendant. The trial court granted Multifoods' motion to be relieved and the counterclaim is not before us. Appeal from summary judgment is taken.

## DECISION

### I.

ARE GUARANTORS, SUED INDIVIDUALLY, ENTITLED TO RAISE THE PRINCIPAL DEBTOR'S DEFENSES ARISING OUT OF THE UNDERLYING CONTRACT? CIRCUMSTANCES OF THIS CASE DO NOT SO WARRANT.

"A guaranty is a promise to answer for the debt, default, or miscarriage of another

person." SDCL 56–1–1. A guaranty creates a secondary liability or responsibility to pay only if another does not. *Western Petroleum Co. v. First Bank Aberdeen,* 367 N.W.2d 773, 776–77 (S.D.1985). Under SDCL 56–1–18, the guarantor's obligation "must be neither larger in amount nor in other respects more burdensome than that of the principal, and if in its terms it exceeds it, it is reducible in proportion to the principal obligation." Additionally, a guaranty is conditioned upon the underlying obligation between the principal debtor and the creditor, and thus, the guarantor is liable only in the event and to the extent that the principal debtor is liable. *Richter v. Industrial Finance Co., Inc.,* 88 S.D. 466, 474–75, 221 N.W.2d 31, 36 (1974). *See also, Midcontinent Broadcasting Co. v. AVA Corp.,* 329 N.W.2d 378, 381 (S.D. 1983), and 38 Am.Jur.2d *Guaranty* §§ 51 and 77 (1968).

Defendants contend that W.M.G., the principal debtor, is not liable to Multifoods because Multifoods provided defective swine concentrate and breached implied and express warranties; therefore, the defendants maintain they are not liable as guarantors. Defendants, in sum, are asserting that as guarantors, they may raise their principal debtor's defenses in order to defeat guaranty liability.

Multifoods advocates that defendants cannot raise W.M.G.'s defenses because (1) the guaranties were absolute; (2) the guaranties were not guaranties but were instead letters of credit for which defendants are primarily liable; and (3) the defendants, through the language of the guaranties, waived the right and ability to assert the principal's defenses. We address the parties' contentions seriatim.

■ If the contract between the principal and the creditor is unlawful, a guarantor is not liable. SDCL 56–1–19. However, notwithstanding any mere personal disability of the principal, under SDCL 56–1–19, the guarantor is liable even though the disability is such so as to make the contract void against the principal. As for whether a guarantor can raise the principal's defenses of breach of warranty or failure of consideration, some courts have held the guarantor cannot, *see* 38 C.J.S. *Guaranty* § 88, at 1261 (1943), and some courts have held the guarantor can. *See Deep South Services, Inc. v. Wade,* 248 Ga. 80, 281 S.E.2d 561 (1981). We view the principal debtor and guarantors in this case as really one in the same persons.

In *Walcutt v. Clevite Corp.,* 13 N.Y.2d 48, 55, 241 N.Y.S.2d 834, 838, 191 N.E.2d 894, 898 (1963), the New York Court of Appeals held that a guarantor could assert the principal's defense of failure of consideration where the principal was a corporation and the guarantor was its president and sole stockholder who was also involved in all negotiations. In the case at bar, the guarantors—the five defendants—are the officers and sole stockholders of the principal debtor W.M.G. Under these circumstances, absent any infirmities hereinafter discussed, this Court could very well hold that defendants, as guarantors, may therefore raise their principal's defenses to liability.

■ As for Multifoods' contentions, an absolute guaranty is a guaranty to pay on default and is not conditioned on the occurrence or non-occurrence of any other event. 38 Am.Jur.2d *Guaranty* § 110 (1968). Unless conditioned on some precedent event, all guaranties are absolute. SDCL 56–1–15. Absolute guaranties do not, ipso facto, create strict liability under all circumstances.

■ We do not accept Multifoods' contention that the documents here in question constitute letters of credit instead of guaranties. A letter of credit creates a primary liability while a guaranty creates a secondary liability. *Western Petroleum,* 367 N.W.2d at 777. When resolving such a contention, the intent of the parties to create an origianl or collateral obligation is controlling and usage by the parties of the term "guaranty" or "guarantee" is not conclusive of an intent to assume a mere collateral obligation. *Western Petroleum, id.; Miners & Merchants Savings Bank v. Comer,* 82 S.D. 1, 3–4, 140 N.W.2d 390, 391 (1966). Here, the documents in question

are entitled "Guaranty"; W.M.G. is denominated "debtor"; defendants are denominated "guarantors"; and W.M.G. is to incur the indebtedness. Construing these documents to give "that effect which shall best accord with the intentions of the parties, as manifested by the terms of the [documents], taken in connection with the subject-matter to which it relates[,]" *Birken v. Tapper*, 45 S.D. 600, 605, 189 N.W. 698, 700, 24 A.L.R. 832, 837 (1922) (citation omitted), and cognizant of the fact that these documents are printed forms of Multifoods, "which must be presumed to understand the difference between a direct obligation and that of a guarantor, and to have carefully prepared its printed forms in the light of that understanding," we deem these documents to be guaranties. *Miners & Merchants Savings Bank v. Comer*, 82 S.D. at 7, 140 N.W.2d at 393.

Multifoods' final contention, which we find to be determinative, is that the defendants, via the strong language of the guaranties, waived the right to assert their principal's defenses.

The guaranties, in relevant part, provided:

> In consideration of credit to be extended by [Multifoods] ... to WMG Pork Farms Inc. ("Debtor") *the undersigned jointly and severally guarantee* to [Multifoods] the *prompt payment* at maturity, *without deduction for any claim of setoff or counterclaim of Debtor* ... the full amount of all indebtedness, direct *or indirect*, absolute *or contingent*, secured or unsecured, which may now or hereafter exist or be owing from Debtor to [Multifoods].... (Emphasis supplied.)

█ It is, of course, axiomatic that the parties to a contract are free to construct their agreement and understanding as they see fit—except for those contracts which violate the law or public policy. The unequivocal language of these guaranties, quoted and emphasized above, prompts this Court to conclude that defendants, even though under these facts are one in the same as the principal debtor, and can thus assert as a matter of law the principal's defenses of breach of warranty and failure

of consideration; we nevertheless hold they have waived their right and ability to assert those defenses in an action by the creditor against them, the guarantors. Our conclusion in no way violates any strong public policy nor does it contravene SDCL 56-1-18 which provides that the guarantor's obligation cannot be larger in amount nor more burdensome than that of the principal. SDCL 56-1-18 applies to the ordinary guaranty and should not be interpreted as preventing the parties to freely assume more of an obligation than that imposed in ordinary circumstances. Here, the language of the guaranties leads to the conclusion that defendants waived their ability and right to assert W.M.G.'s possible defenses to liability. Language of a guaranty can indeed create greater liability on the part of the guarantor, *see Federal Deposit Ins. Corp. v. University Anclote*, 764 F.2d 804, 807 (11th Cir.1985); *Victory Highway Village, Inc. v. Weaver*, 480 F.Supp. 71, 75-76 (D.Minn.1979), *aff'd*, 634 F.2d 1099 (8th Cir.1980); 38 C.J.S. *Guaranty* § 43 (1943). Here, the language waived any possible defenses the defendants might have been able to assert on behalf of the principal. Summary judgment was therefore properly awarded as a matter of law.

II.

IS MULTIFOODS ENTITLED TO AN AWARD OF ATTORNEY FEES FROM DEFENDANTS WHERE THE GUARANTY SO PROVIDES? NO, STATE STATUTE PRECLUDES IT.

█ SDCL 15-17-7 provides, inter alia: "The court may allow attorneys' fees as costs for or against any party to an action only in the cases if it is specifically provided by statute...." In *Lowe v. Steele Constr. Co.*, 368 N.W.2d 610, 614 (S.D. 1985), this Court recently acknowledged: "In the absence of a statute or rule of court or some agreement expressly authorizing taxing of attorney's fees in addition to ordinary statutory costs, such an item of expense is not allowable." (Citations omitted.)

Multifoods contends that because the guaranties expressly allowed it to recover the expenses of collection, including attorneys' fees, it should have been allowed to recover such fees. We agree with the trial court which denied Multifoods such a recovery.

No statute specifically provides for the recovery of attorneys' fees in the present case. On the contrary, SDCL 15–17–10 provides:

> Any provision contained in any note, bond, mortgage, *or other evidence of debt* for the payment of any attorney fee in case of default in payment or of proceedings had to collect such note, bond, or evidence of debt or to foreclose such mortgage is hereby declared to be *against public policy and void.* (Emphasis supplied.)

In *Midcontinent Broadcasting Co. v. AVA Corp.,* 329 N.W.2d at 381, this Court held that a guaranty fell within the meaning of "other evidence of debt" and reversed an award of attorneys' fees which was based on language in a guaranty which permitted such a recovery. *Midcontinent* is controlling. Language in a guaranty permitting recovery of attorneys' fees is against public policy and void as the clear dictate of SDCL 15–17–10 demands.

Affirmed.

HERTZ, Circuit Judge, Acting as Supreme Court Justice, concurs.

MORGAN, Justice, concurs specially.

WUEST, Circuit Judge, Acting as Supreme Court Justice, concurs in part and dissents in part.

FOSHEIM, Chief Justice, dissents.

MORGAN, Justice (concurring specially).

The dissents rely heavily on *Richter v. Industrial Finance Co., Inc.,* 88 S.D. 466, 221 N.W.2d 31 (1974) and *Miners & Merchants Bank v. Comer,* 82 S.D. 1, 140 N.W.2d 390 (1966), which I find to be clearly distinguishable.

In *Richter, supra,* the guarantor became such by operation of law; he signed certain promissory notes as such. There was no separate written contract of guaranty. To that situation, the statutory limitation of SDCL 56–1–18 would clearly apply.

In *Miners & Merchants Bank, supra,* the undertaking of the guarantor was endorsed on the reverse side of the promissory note, reading as follows: "For value received, I hereby guaranty the payment of the within note at maturity or at any time thereafter, and hereby agree and consent to all stipulations contained therein." The decision turned on whether, by reason of facts pleaded by the guarantor, it was discharged or whether, as Bank claimed, it was an original and independent undertaking, not entitled to exoneration as a mere guarantor. We are not advised on what fact the trial court based its decision of exoneration, but clearly the writing signed by the guarantor was in no way comparable to the guaranty executed in this case.

In *Midcontinent Broadcasting Co. v. AVA Corp.,* 329 N.W.2d 378 (S.D.1983), also cited by Justice Wuest, the decision involved the liability for attorney fees under the provisions of the guaranty agreement. The decision against allowing the fees actually focused on SDCL 15–17–10, which precluded attorney fees as against the principal on the note and therefore, as we held, likewise precluded fees under the guaranty agreement which constituted "other evidence of debt."

I agree that the particular terms of the guaranty agreement in this case raise it above the language of the general statute and the prior decisions of this court.

> A written guaranty of payment of the principal's indebtedness, although collateral to the principal indebtedness guaranteed, is yet independent of it, governed by its own terms.

*McAllister v. Pier 67, Inc.,* 1 Wash.App. 978, 465 P.2d 678, 681 (1970).

> The guarantor's promise is to perform if the principal does not.... If the principal does not perform and the other conditions precedent to liability are satisfied or excused, the promise of the guarantor becomes absolute.... The conditions precedent to liability in a guarantee contract are for the benefit of the guaran-

tor: e.g., a demand for payment, ... and the exhaustion of recourse against the principal. However, these conditions may be eliminated in the agreement itself ... or by subsequent agreement ... or waived by the party for whose benefit the condition exists.

*Id.* at 682 (citations omitted).

As noted in the majority opinion, the guaranty may be coextensive with, or broader or narrower than, the principal contract. 38 C.J.S. *Guaranty* § 43 (1943). "The nature and extent of the liability of a guarantor depends on the terms of the contract of guaranty, ... and if the terms of the contract so state, a guarantor may assume a greater liability than that of the principal." *Paul Revere Protective Life Ins. Co. v. Weis,* 535 F.Supp. 379, 386 (E.D. Pa.1981) (citation omitted).

The language of the guaranty agreement clearly waived the defenses which the guarantors seek to assert herein and I agree that summary judgment was therefore properly awarded as a matter of law. I concur fully in the disposition of Issue II.

WUEST, Acting Justice (concurring in part, dissenting in part).

I dissent from that part of the majority opinion which holds that the defendants/appellants waived any possible defenses they might have been able to assert on behalf of the principal. The plain language of the guaranties * relied upon by the majority relates to setoffs and counterclaims. The main defense is failure of consideration which is not a setoff or counterclaim.

SDCL 56–1–18 is controlling and provides:

The obligation of a guarantor must be neither larger in amount *nor in other respects more burdensome than that of the principal,* and if in its terms it exceeds it, it is reducible in proportion to the principal obligation. (Emphasis added.)

In *Richter v. Industrial Finance Co., Inc.,* 88 S.D. 466, 474–75, 221 N.W.2d 31, 36 (1974), we said SDCL 56–1–18 is merely: [A] codification of the common law in this respect. Generally, the liability of a guarantor cannot exceed the liability of the principal debtor, and *all guaranty contracts are conditioned upon the underlying obligation between the creditor and the principal debtor.* 38 Am. Jur.2d, Guaranty, §§ 74 and 77. In order for a plaintiff to enforce an underlying obligation against a guarantor, the plaintiff must show that the guaranty debt or obligation is due him, and, *if for any reason the principal debtor is not bound to make payment to the creditor or plaintiff, the plaintiff may not hold the guarantor liable.* 38 Am.Jur.2d, Guaranty, § 77; *Merchants National Bank v. Citizens' State Bank,* 93 Iowa 650, 61 N.W. 1065 [(1895)]. The rule is that a guarantor is liable only in the event and to the extent that his principal is liable.

The reason for the rule is obvious. As stated in *Miners & Merchants Bank v. Comer,* 82 S.D. 1, 140 N.W.2d 390 [(1966)]:

'A guaranty is a promise to answer for the debt, default, or miscarriage of another person. SDC 26.0101. It is a contract on the part of one person which is collateral to a primary or principal obligation on the part of another. One who signs a contract of guaranty of payment upon a negotiable instrument assumes a separate, collateral and *secondary obligation.* He is not an original contractor.' (Emphasis in original.)

'Therefore, unless the (principal) debtor is bound under the principal contract, there is no obligation which is guaranteed and the guarantor is not liable to

---

* In consideration of credit to be extended by [Multifoods] to W.M.G. Pork Farms, Inc. ("Debtor") *the undersigned jointly and severally guarantee* to [Multifoods] the *prompt payment* of maturity, *without deduction for any claim of setoff or counterclaim of Debtor* ... the full amount of indebtedness, direct *or indirect,* absolute *or contingent,* secured or unsecured which may now or hereafter exist or be owing from Debtor to [Multifoods]. (Emphasis supplied.)

the creditor if the (principal) debtor fails to perform.' 38 Am.Jur.2d, Guaranty, § 51. In *Federal Deposit Insurance Corp. v. Stensland,* 70 S.D. 103, 15 N.W.2d 8 [(1944) ], the court held that a 'guaranty partakes the character of the principal contract.'

We followed the *Richter* decision in *Midcontinent Broadcasting Co. v. AVA Corp.,* 329 N.W.2d 378, 381 (S.D.1983), where we said:

> Additionally, *Richter v. Industrial Finance Company, Inc.,* 88 S.D. 466, 474, 221 N.W.2d 31, 36 (1974), holds that a guaranty is 'conditioned upon the underlying obligation between the creditor and the principal debtor.'

There may be situations wherein a counterclaim or defense is personal to the principal and therefore unavailable to the guarantor, but that is not the situation herein. *See Walcutt v. Clevite Corporation,* 13 N.Y.2d 48, 241 N.Y.S.2d 834, 191 N.E.2d 894 (1963), modified as to award of costs only at 13 N.Y.2d 903, 243 N.Y.S.2d 511, 193 N.E.2d 511 (1963).

In my opinion, there is a factual issue as to the defenses of failure of consideration, breach of contract, and breach of warranty and I would reverse and remand for trial.

FOSHEIM, Chief Justice (dissenting).

I dissent. Under SDCL 56–1–18 "[t]he obligation of a guarantor *must* be neither larger in amount nor ... more burdensome than that of the principal,...." [Emphasis added.] The majority concludes, however, that the guarantor may waive the protections of SDCL 56–1–18. Upon reviewing the authorities cited, I am unable to agree with this broad conclusion since neither case contemplates the effect of a statute similar to SDCL 56–1–18 on the extent of a guarantor's obligation. Moreover, both cases concern guaranty of deficiencies under mortgage foreclosures, not the waiver of defenses available to a guarantor standing in the shoes of the principal. *See cases cited by majority, Federal Deposit Insurance Corp. v. University Anclote, Inc.,* 764 F.2d 804, 807 (11th Cir.1985); *Victory Highway Village, Inc. v. Weaver,* 480

F.Supp. 71, 75–76 (D.Minn.1979), *aff'd,* 634 F.2d 1099 (8th Cir.1980).

In *Richter v. Industrial Finance Co., Inc.,* 88 S.D. 466, 221 N.W.2d 31 (1974), this court held that under SDCL 56–1–18 a guarantor is liable only in the event and to the extent that his principal is liable. "[I]f for any reason the principal debtor is not bound to make payment to the creditor or plaintiff, the plaintiff may not hold the guarantor liable." *Id.* at 474–75, 221 N.W.2d at 35–36. The facts and circumstances presented here do not warrant such a hasty departure from our statute or our prior interpretation of it.