## 75251. DAVIDSON v. WILLIS.
(362 SE2d 115)

DEEN, Presiding Judge.

This case involves a series of transactions reeking, on both sides, of malfeasance, misfeasance, non-feasance, and reprehensible acts

ranging from the one extreme of active fraud and duress to the other extreme of failure to exercise what would even approach the ordinary care expected of that darling of the law, the reasonable prudent man. Appellant Gilbert Davidson, who controlled several corporations as well as being Trustee for the Employee Pension Trust for one of the corporations (Davidson, Inc.), in early 1978 made available to a neighbor, appellee Willis, an importer by trade, $15,000 in Pension Trust funds to enable the latter to obtain a letter of credit for the importing of certain goods manufactured in Korea, the profits from which would be used to repay the loan plus interest. The deal did not materialize because of the facility's inability to supply items meeting specifications, but Willis repaid neither principal nor interest, subsequently admitting that he had used the funds in the operation of his own corporation, Unicorn, Ltd. In so admitting, Willis pointed out (correctly) that the loan document imposed no restriction on the use to which the funds were to be put. In June 1978 Unicorn executed a demand promissory note for the $15,000; apparently, however, no payment was ever tendered.

In late 1979, despite the fact that Willis had not repaid the $15,000 to the Pension Trust, Davidson and Willis entered into a joint venture between the Davidson Co. (apparently a family-owned corporation entirely separate from Davidson, Inc., whose Employee Pension Trust was plaintiff below and appellant here) and Unicorn, Ltd., for importing from Korea certain manufactured goods. As inducement for Davidson to participate in the joint venture, Willis allegedly showed him copies of "firm orders" for the goods placed by Georgia businesses; it was revealed later, however, that one of the "orders" had never been placed at all by the company whose name and address appeared on the invoice, and that the goods shown on the other invoice had been rejected by the other named firm for allegedly poor quality. Davidson had posted with the lender bank collateral consisting of certain certificates of deposit belonging to the Pension Trust; when the purported business transaction did not go through, the bank foreclosed on the certificates of deposit. Examination of the joint venture agreement reveals that Davidson signed in his capacity as President of the Davidson Company, that the agreement made no mention at all of the Pension Trust, and that the agreement contained a provision expressly forbidding either party to assign its "interests and rights."

Davidson then devised a scheme whereby he falsely represented to Willis that a foreign buyer was interested in buying the unsold imported items, and thereby induced Willis to sign, in October 1983, a bill of sale as joint venturer. Davidson then revealed that it was Willis himself to whom the goods and accounts receivable were to be sold, in exchange for a consideration consisting of a promissory note for

$125,000 (the amount allegedly owed by Willis in his various *personae*, and incorporating a security interest in the unsold items, the accounts receivable, and the proceeds of a pending claim against the Korean manufacturer of some of the defective parts), plus a security deed on his residence. Willis then tore up the bill of sale (Davidson later taped it together and fastened it to the other documents), but when Davidson threatened to have him prosecuted, he signed the promissory note and related documents. Willis then filed with local police a complaint against Davidson for assault, false imprisonment, and duress; the complaint was never prosecuted, and Davidson alleged subsequently that Willis had affirmatively concealed from him the fact that the complaint had been filed.

In February 1985 Davidson, in his capacity as Trustee of the Employee Pension Trust, filed an action in two counts[1] against Willis in the Fulton County State Court, seeking collection of the face amount of the note plus interest and attorney fees, and damages for fraudulent inducement to advance substantial sums of money. When, after several delays, the case went to trial in March 1987, defendant Willis moved for directed verdict at the close of plaintiff's evidence. The trial court granted the motion on both counts, holding that there was no sufficient consideration for the obligation sued upon in Count I; and as to Count II, that the fraud action not only was not assignable (i.e., from the corporation to the Pension Trust), but that it was barred by the running of the statute of limitations.

On appeal Davidson enumerates as error the granting of a directed verdict, contending that there was sufficient evidence adduced to authorize a verdict for plaintiff on each count. *Held*:

Our scrutiny of the voluminous record in the instant case persuades us that the judgment below should be affirmed. On Count I, the course of both parties' actions leading up to the signing of the promissory note and related documents, and subsequent thereto as well, reads like something out of a comic strip. Although appellant is correct in contending that no consideration is required for an antecedent obligation, the trial court's ruling that no antecedent obligation was involved is borne out by the terms of the documents prepared by Davidson and signed (clearly under actual duress, if not of sufficient magnitude to constitute legal duress) by Willis. See OCGA § 11-3-408; *Deep S. Svcs. v. Wade*, 248 Ga. 80 (281 SE2d 561) (1981). The "consideration" (unsaleable parts and uncollectible accounts) which Willis was forced, under threat of prosecution, to accept in return for signing the promissory note and related documents, could hardly, by any

---

[1] He also filed a third count for slander and libel pertaining to the filing of the police complaint. He subsequently dismissed that count without prejudice.

stretch of the imagination, be regarded as a *quid pro quo* for a note for a $125,000 indebtedness plus the deed to one's home.

As to Count II, examination of the joint venture agreement reveals (as noted, supra) that appellant Davidson signed as President of Davidson Co., Inc. — *not* as Trustee of the Pension Trust; there was no mention at all of the latter entity in the document. See OCGA § 11-3-403; *Yeomans v. Coleman, Meadows &c. Co.*, 167 Ga. App. 646 (307 SE2d 121) (1983). As to Davidson's purportedly tardy recognition of the spuriousness of Willis' representations, we cannot avoid the conclusion, after reviewing the chain of events and the papers pertaining thereto, that any ordinary prudent man — and *a fortiori* one occupying the fiduciary position of Trustee — was guilty at the very least of lack of due diligence, in entering agreements committing funds — *others'* funds, at that — without verifying the authenticity of the "orders" and the reputations of the manufacturers/suppliers. If Davidson truly did not discover the allegedly fraudulent discrepancies between representation and fact until as late as he asserts he did, then he certainly should have done so, given the series of events that occurred. He adduced no competent, credible evidence that would support his contentions. Although there were conflicts in the evidence presented by the parties, none was of such scope or materiality as to preclude the direction of a verdict for defendant. OCGA § 9-11-50 (a). While we would not go so far as to say that justice triumphed in the action below, we can say that at least one of the parties received no more than his just deserts.

*Judgment affirmed. Birdsong, C. J., and Pope, J., concur.*

DECIDED OCTOBER 15, 1987.

*Richard L. Stumm*, for appellant.
*Charles E. Brown*, for appellee.